R. C. MATHEWS, Respondent, v. BERT EBY, Appellant.

Springfield Court of Appeals, July 7, 1910.

1. ATTACHMENT: Debt Fraudulently Contracted: Sufficiency of Evidence. To sustain the ground of attachment that "the debt sued for was fraudulently contracted," the evidence was to the effect that defendant had purchased three mules from plaintiff and had promised to send a check in payment for the same on his return home, and that defendant failed to send the check. *Held*, that this evidence showed a breach of contract and not such a false representation as to constitute a debt fraudulently contracted on the part of the debtor within the meaning of section 366, R. S. 1899 of the Attachment Act.

2. FRAUD: Misrepresentations. A representation to constitute in law a fraud, must relate to an existing fact as distinguished from a promise and the representation regarding the existing fact must be relied upon.

Appeal from Scott Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED (*with directions*).

*Marsh Arnold* and *Brown & Gallivan* for appellant.

*Joe Moore* for respondent.

NIXON, P. J.—This was an action brought in the circuit court of Scott county on an account in the sum of $375, and a writ of attachment was sued out in aid thereof, the ground for attachment being that the debt sued for was fraudulently contracted. This writ was levied on three mules—the subjects of this controversy. The defendant filed a plea in abatement which, among other things, denied that the debt sued for was fraudulently contracted. The verdict of the jury sustained the attachment. The defendant then answered, but upon plaintiff's motion, a part of the answer was stricken out, and defendant declining to plead further, judgment was rendered for plaintiff for the amount sued for. Defendant has appealed and insists that the attachment should not have been sustained because the evidence does not show that the debt sued for was fraudulently contracted.

This litigation had its inception in the sale of three mules. The evidence shows that plaintiff was a dealer in mules, maintaining a mule barn in Sikeston, Scott county, Missouri. That about the 1st of April, 1908, defendant appeared at plaintiff's mule barn, and, after having examined several mules, had two hitched to a wagon and tried them and said he would take them, together with another mule he had examined. The two mules were priced at $190 each and the separate mule at $175, making a total of $555, but plaintiff told defendant he would sell the three for $550. There is a direct conflict in the evidence as to what then occurred. Plaintiff testified that defendant went up town and then came back and caught the mules and said, "I haven't

got my check book here and I can't pay you for this now, but I will send you a check when I get home." Plaintiff says he went up town and asked a man who was well acquainted in that country what he thought about letting the mules go on that kind of a promise and that he was told it would be perfectly safe. That plaintiff then told defendant he could take them, but to send the check at once. Then he waited about two weeks and then wrote to defendant. Not receiving a reply, he wrote again, but to no avail. Plaintiff says that after about five weeks he sent Alfred Emery to the defendant; that the defendant sent back $100 with a promise to pay the balance at once; that after waiting about a week longer, he wrote again, and then defendant came from his home in New Madrid county to Sikeston and wanted to turn back the two mules which had been priced at $190 each, but plaintiff refused to take them and told defendant to get the matter settled up by the following Monday. That defendant returned on Monday and left the two mules at plaintiff's mule barn in plaintiff's absence. They met later, however, and had some words, defendant saying one of the mules was not worth $1.50. Plaintiff then offered him $150 for the mule but defendant would not take less than $165 which plaintiff refused to give because the mule had become lame and both of them had deteriorated in value. Defendant then paid him $75 more, leaving a balance due of $375, and plaintiff prepared a note for that amount and gave it to the defendant with directions to get it signed by certain named persons so that he would have something to show for the sale. Plaintiff states that he then saw defendant "acting peculiar" and that defendant skipped back and got the bridle he had had on one of the two mules which he had brought to the barn, and wrapped it up in his rain coat, walked around "back there" a while, and then went out. That plaintiff was then convinced that defendant was trying to beat him by leaving the mules there anyhow. That

he went out and found that defendant had also brought the third mule to town, and he at once started attachment proceedings and secured possession of the three mules. It is not necessary to go into the details attending the intervening steps in view of the position we take in this case. Defendant's testimony was that he did not agree to send a check at once, but that he was to take the mules home and pay at a future date when his brother had secured some money on a loan; that nothing was said about a check; that the mules were warranted and that if they were not "all right" defendant could return them.

The statutory ground set out for the attachment and which was relied upon by the plaintiff was that the debt sued for was fraudulently contracted. There having been a formal plea by the defendant in the nature of a plea in abatement, the plaintiff was required to sustain his attachment by proof that the debt sued for was fraudulently contracted, and on failure to make this proof, his attachment should have been dissolved. The only evidence offered by the plaintiff at the trial to sustain his attachment was to the effect that the debt sued for represented the purchase price of three mules which the defendant had purchased of the plaintiff for the agreed price of $550, and that the defendant at the time of such purchase, to induce the plaintiff to make the sale, represented to the plaintiff that on his return home he would send the plaintiff a check for the amount due him. Defendant's own evidence shows that he had no money in the bank, but was relying upon his brother to make a loan and obtain the money. The defendant claims that this proof was not sufficient to sustain the allegation that the debt was fraudulently contracted. The court, at plaintiff's request, gave the following instruction: "If you believe from the evidence that defendant obtained possession of the mules purchased by representing to plaintiff that he would send him check as soon as he reached home, thereby implying that he

had the money in the bank with which to pay for said mules, when as a matter of fact he did not have the money with which to pay the purchase price of said mules, then this fact may be considered by the jury in determining whether this debt was fraudulently contracted, and if you so believe from the evidence, then your finding should be for the plaintiff."

As the only fraud claimed was a false representation, unless the representation was fraudulent, the debt was not fraudulently contracted. A representation, to constitute in law a fraud, must relate to an existing fact as distinguished from a promise, and representations regarding existing facts must be relied upon to constitute fraud. In the present case, the statement of the defendant that he would send plaintiff a check on his return home and his failure to do so was a breach of contract, but not such a false representation as to constitute a fraud, and the proof of such facts will not sustain the allegation, upon which the attachment was issued, that the debt was fraudulently contracted within the meaning of the attachment act. [See Bullock v. Wooldridge, 42 Mo. App. 356; Stocking v. Howard, 73 Mo. 25.]

The judgment is reversed and the cause remanded with directions to the circuit court to set aside its order sustaining the attachment and enter an order dissolving the same. All concur.