BETTIE LONG, RESPONDENT, v. C. W. S. FREEMAN, APPELLANT.—69 S. W. (2d) 973.

Springfield Court of Appeals. February 20, 1934.

Rehearing denied April 3, 1934.

*E. C. Medlin, J. E. Sater* and *D. H. Kemp* for appellant.

*D. S. Mayhew* for respondent.

BAILEY, J.—This suit for damages arising out of certain alleged fraudulent representations in the exchange of real estate, was instituted in Newton County, November Term, 1927; a change of venue was taken to the Circuit Court of Jasper County and the case was tried in that court on the 20th day of June, 1932, resulting in a verdict and judgment for plaintiff in the sum of $1500 and defendant appealed to this court. The long delay in reaching the appellate court is unaccounted for but we assume the case was twice tried in circuit court.

In her petition plaintiff alleges that on the 17th day of November, 1926, she was the owner of certain real estate consisting of a lot upon which was located a six room house and also a six room duplex house in the City of Tulsa, Oklahoma, of the value of $8000, and subject to a mortgage in the sum of $2000; that she was at the time a widow, alone in the world, old and incapacitated from properly attending to business; that defendant fraudulently took advantage of her said condition and induced plaintiff to exchange her said property for a certain eighty acres of farm land in Barry County, Missouri, by certain false and fraudulent representations (which for convenience, we have numbered) as follows: (1) that the farm was worth $8000 and that he had been offered $100 per acre for same but had refused; (2) that there was twenty-five or thirty people wanting this farm; (3) that the mortgage on the Barry County farm had five years to run from the date of the contract; (4) that the farm had thereon four acres of growing strawberries which defendant owned and that she would receive the entire strawberry crop; (5) that she would receive all rent corn amounting to 280 bushels from the farm; (6) that the $2000) was all the mortgage against the land when in truth there was a second mortgage for $60; (7) that she would clear $600 or $700 per year off the strawberries; (8) that she could make $90 per acre off the tomatoes growing on said land; (9) that she could get enough income off the farm in three years to pay off the entire indebtedness and by reason of all of which she was induced to sign the contract filed with the petition by which she agreed to the exchange of property and did exchange same by mutual warranty deeds.

Plaintiff further alleged that all of the above representations were

untrue and fraudulently made to induce plaintiff to sign said contract; that the farm of defendant, "is not worth to exceed the sum of three thousand dollars, etc;" that she was damaged in the sum of $5000 for which she asked damages.

Defendant's answer admits the execution of the contract and exchange of properties but denies each and every other allegation in the petition contained.

It is first urged that the trial court erred in refusing to give an instruction in the nature of a demurrer to the evidence offered at the close of the whole case. In this connection the trial court withdrew from the jury, by an appropriate instruction, the consideration of all evidence in respect to tomatoes, which takes out of the case the alleged fraudulent representation we have designated as Number "8."

In considering the demurrer to the evidence plaintiff's testimony is to be taken as true and given its full weight, together with every reasonable inference therefrom in her favor. [Maiden v. Fisher, 17 S. W. (2d) 563.]

She testified in substance, that she had listed her property in Tulsa with one Cunningham, a real estate agent (who was also defendant's brother-in-law) and that thereafter he took her on a trip to Missouri for the purpose of looking at some farms; that she looked at several farms and among them the farm of defendant; that she did not walk over the place because it was raining, but that they drove down in the pasture and down the road to the pasture and on returning looked at the lower rooms in the house; that she made two trips on which she looked at the property; that on the first trip Mr. Freeman told her the farm was worth $8000, that he had been offered $100 per acre for it; that he told her there was 280 bushels of rent corn on the place which she would get but that it turned out there was but eighty bushels; that he told her there was four acres of strawberries, but in fact there was but two acres. Her evidence further shows that she entered into a written contract for another farm in Barry County prior to the time she entered into the contract with defendant for his farm, but for some reason the first contract fell through. She inspected several farms, but the inspection of the Freeman farm, she says, was only from a car. In the additional abstract filed by plaintiff, it appears that she testified that she did not walk around the farm because it was raining but she fails to state on what occasion, since she twice visited the farm. She offered further evidence tending to prove that her property in Tulsa was worth $7000 to $7500 and that the farm of defendant was worth from $2400 to 3000. There is no testimony as to plaintiff's age or that on account thereof she was incapacitated so as to prevent her inspection of the farm, although there are such allegations in the petition.

Plaintiff further testified that, after she returned to Tulsa, she received two letters from defendant in regard to the trade and that finally he came there and that defendant and Cunningham called on her about the trade; that at that time, and before she signed the contract, he represented to her that the farm was worth $8000 and that relying on his statements as to the value of the farm she finally signed the contract and afterwards executed the deed to the Tulsa property and received a deed from defendant and his wife to the farm.

The material part of the written contract entered into between plaintiff and defendant on the 15th day of November, 1926, reads as follows: ''Party of the first part is trading two houses on Lot Five (5), Block 28, Owens Addition to the City of Tulsa, Okla., party of the 1st part is to increase her present loan from $1500.00 to $2000.00 and is to be deeded to party of the 2nd part subject to a $2,000.00 loan.

''Party of the second part is giving in exchange for the above described property one certain eighty acres of land located 1/2 mile East and one-half mile South of Wheaton, Missouri, and known as the Roge Flaxbeard farm, but now owned by the party of the 2nd part.

''Party of the 1st part is to get one-third of all the corn that was grown on the farm for the year of 1926, party of the 1st part is to pay the taxes on the farm for the year 1926.

''Party of the second part is to deed the land subject to a $2000.00 loan which runs about five years from this date at 7% and of which the party of the 1st part agrees to pay.

''Party of the 2nd part agrees to pay all the interest on the farm loan up to date, of which would be about 10 months interest. Party of the 2nd part also agrees to pay the taxes on the Tulsa property for the year of 1926. Both parties are to make General Warranty Deeds to their property free and clear of any mortgages or liens except as above stated. This deal is to be completed within the next 10 days or just as soon as party of the 1st part can get her loan completed on moneys derived from the above mentioned loan.''

The general rule is that representations as to the value of property do not ordinarily constitute fraud but are regarded as mere expressions of opinion. [McCaw v. O'Malley, 249 S. W. 41, 298 Mo. 401; Cahn v. Bungardt, 18 Mo. App. 115; Mitchell v. Eidson, 50 S. W. (2d) 135, 330 Mo. 445.]

That rule, however, does not apply when the parties are not upon an equal footing. Generally speaking, if property lies at a distance, or from its character, situation and surroundings, one party is unable to judge of its value, and the other party is well acquainted with the property and its value or pretends to be, the party to whom representations as to value are made by the other party in a position

to know, may rely upon such representations of value. In the case of Stonemets v. Head, 248 Mo. 243, 154 S. W. 108, the rule is thus stated:

"And broadly where the thing (say, value) about which an opinion is expressed by a party to a trade lies at a distance and special confidence is reposed by one who is without knowledge, a false opinion expressed by the other party to the transaction who has that knowledge or who professes to have it, when given to be relied and is relied on as a procuring cause of the transaction, the rule in regard to opinions in cases of fraud may be somewhat relaxed under guarded limitations—always, however, bearing in mind that ordinarily mere opinions given as such or mere prophesies or opinions as to what land will produce in the future, or speculative statements depending on contingencies, as whether ore in a mine can be profitably mined in the future or is pay ore and the like, are not actionable." [Stonemets v. Head, 248 Mo. l. c. 268, 269.]

Considering all the facts and circumstances, we think plaintiff made a case for the jury under the alleged false representation as to value. Although she made a cursory inspection of defendant's farm, she was unable to give same a careful inspection on account of weather conditions at the time or times she attempted to do so. She possessed a valuable property in Tulsa, according to her evidence worth at least $7500, and if defendant, taking advantage of the circumstances, induced her to believe that the Missouri farm was worth that amount or more, and she relied thereon and was induced to sign the contract and deed away her property on that account, we think the rule set forth in the Stonemets case would apply, but under proper instructions as to her having had an opportunity to herself make inquiries and inspect the land as to its value.

The other alleged allegations of fraud were either not proven or were not actionable, particularly where no damages as a result thereof were attempted to be proven. It can make no difference whether twenty-five or a hundred people were wanting the farm. While there is proof that there were but two acres of growing strawberries, instead of four as represented, no damages on account thereof were shown. There is no proof as to the value of corn at the time of the trade or any other time, and even if the representation as to the number of bushels of corn on the farm was actionable, the proof as to damages failed. No damages were shown as to there being a second mortgage on the farm for $60. In this connection it will be noted from the contract that the farm was to be deeded subject to a $2000 mortgage, bearing interest at seven per cent. It turned out that the $2000 mortgage actually bore interest at the rate of six per cent (instead of seven per cent provided in the contract), but the additional one per cent was represented in this second mortgage. It is self evident that plaintiff was not injured or damaged on account

of that misrepresentation. The allegations that she would clear a certain amount off the strawberries and could pay for the farm in three years out of the income from the farm, were representations as to facts neither past nor present, but as to something in the future and were therefore not actionable. [Reed v. Cooke, 55 S. W. (2d) 275; Mathews v. Eby, 129 S. W. 1016, 149 Mo. App. 157.]

Defendant was entitled to have those matters taken from the consideration of the jury as he attempted to do by certain withdrawal instructions.

Error is assigned in the giving of plaintiff's Instruction "A." This instruction submitted to the jury all the alleged false representations except the one in regard to the tomatoes and ended by authorizing the jury, if they found the issues in favor of plaintiff, to, "assess her damages at such sum as you may believe and find from the evidence in the case as will reasonably compensate plaintiff for the damages suffered, if any, by her exchange of said properties, not to exceed, however, the sum of five thousand dollars." As we have heretofore indicated, the only representation that should have been submitted to the jury under the law and the evidence was that in regard to the value of the farm. The instruction was therefore erroneous in that respect. Also, while the point is not raised in the briefs, the instruction is bad in failing to give to the jury a proper rule and guide on the measure of damages. Under this instruction the jury were told that they might assess the damages in any sum they might believe from the evidence would reasonably compensate plaintiff. They were given a free hand up to the limit of the petition and included in that were all the elements of damages that might arise although the only question that could be properly submitted under the evidence was damages resulting from the alleged false representation as to value. The true measure of damages was the difference, if any, between the value of the farm as it actually was at the time the contract was entered into and the value of the farm at that time if it had been as represented by defendant. [Zeitinger v. Steinberg, 277 S. W. 953; Thompson v. Lyons, 220 S. W. 942, 281 Mo. 430; Wolfersberger v. Miller, 39 S. W. (2d) 758, 327 Mo. 1150.]

The jury should have been so instructed. [Pannell v. Allen, 160 Mo. App. 714, 1. c. 722, 142 S. W. 482.]

There are other alleged errors which are disposed of by what has been said. We think the case should be reversed and remanded. It is so ordered. *Allen, P. J.,* and *Smith, J.,* concur.