257 S.W.2d 408 (1953)
WOLF
v.
KANSAS CITY TIRE & SERVICE CO. et al.
No. 21813.
Kansas City Court of Appeals. Missouri.
March 16, 1953.
*409 Robert A. Meyers and Roger J. Barbieri, Kansas City, for appellant.
Reed O. Gentry, Jack B. Robertson and Rogers, Field & Gentry, Kansas City, for respondents.
CAVE, Judge.
This is a suit for actual and punitive damages arising from alleged fraud in the sale of an automobile by defendants to plaintiff. The cause was heard by a jury which returned a verdict in favor of plaintiff for $400 actual and $2,000 punitive damages. Defendants' motion for a new trial was sustained on the ground that plaintiff's instruction No. 1 was erroneous, and plaintiff appealed.
The petition alleges that plaintiff was desirous of purchasing a used automobile and went to a lot where such automobiles were sold by defendant, Dependable Motors, Inc.; that such defendant, acting as the agent of the defendant, Kansas City Tire and Service Company, sold plaintiff a 1941 Plymouth sedan, and fraudulently represented that the car was "in first-class mechanical operating condition; that the automobile had been driven only some 60,000 miles, as indicated by the mileage indicator of said automobile, and was of the value of a Plymouth automobile driven only that distance, and except for a few minor repairs, ready for immediate and constant service for the purposes for which plaintiff desired it; * * * that said automobile *410 was well worth the value asked, and that plaintiff bought * * * said automobile for the price and sum of $550." The petition also alleges that plaintiff relied on said representations but in truth and in fact they were false, and were fraudulently, wrongfully, maliciously and wantonly made; that the agent, servant and employee knew said statements were false and untrue, or made said representations knowing that the defendants did not know whether said facts were true or false.
Defendants' answer admitted that the Kansas City Tire and Service Company was the owner of the car described in the petition and that Dependable Motors, Inc., acted as the agent to sell the same, and did sell said car to the plaintiff, but denied all other allegations.
Plaintiff testified that on May 10, 1949, he went to the used car lot of defendant, Dependable Motors, for the purpose of purchasing a second-hand car and looked at several makes of cars and "shopped around for something I thought I could afford to buy. * * * I finally settled for a 1941 four-door Plymouth." Carl Hayden was the salesman in charge of the lot. "I told him that I wanted to buy something, five or six hundred dollars was all I could afford on a car. And after seeing this one, why, he said it was selling for $550 and it would be a dandy little buy for me; and we looked the car over and discussed it. I asked him how many miles it had on it, and he said just about 60,000 miles." Hayden also told him "it has just been gone through the shop and it is in perfect mechanical condition and it will go a long ways without giving you any trouble." It had been painted recently and had new tires. Plaintiff did not buy the car on May 10 but stated that "he would think it over and return," which he did the next day. When he returned on May 11 Hayden repeated substantially the same representations concerning the car and suggested that plaintiff drive it, which he did for a short distance. Hayden got in the car with plaintiff and "we drove up McGee Trafficway two or three blocks, and going up the grade, why, it didn't have quite as much pickup as I thought it should have, so I told him that it seemed like it wasn't picking up speed, and he said the clutch was slipping just a little and needed a minor adjustment; that they would take it over in the shop and adjust it." The sale was completed by plaintiff trading in an old car that was valued at $200 and he paid the balance in cash. He waited for about thirty minutes, but the car was not taken to the shop for an adjustment of the clutch; he said he had to take his wife to the hospital and took the car and left. On crossexamination plaintiff testified that before he purchased the car Hayden told him that the heater was disconnected; that the clutch was "slipping a little"; that while driving the car, in company with Hayden, he discovered that the brakes "weren't working right."
Plaintiff drove the car from defendant's lot directly to Armour Motors Garage and had the clutch and brakes adjusted, which took only a few minutes. A few days after the purchase, he discovered that the muffler was missing and that some of the main leaves in the rear springs were broken, and he and a friend replaced these parts. He drove the car in Kansas City for about two weeks and then made a trip to Nevada, Missouri, a distance of approximately 88 miles, and on that trip he noticed "the motor was making an awful clattering and hammering noise," so he took the car to Armour Motors to ascertain what the trouble was, and Rex Carter, a mechanic there, gave the car what he called "a minor overhaul"; that some time thereafter he drove to Independence, Kansas, and on that trip he noticed "an awful howling noise in the rear end," and took the car back to Armour Motors where a complete inspection and overhaul was made by Carter.
Rex Carter testified that he had been an automobile mechanic for 35 years and had had wide experience in repairing various types of automobiles; that on May 31, 1949, plaintiff brought the Plymouth sedan in controversy to Armour Motors and he overhauled the engine and other moving parts; that the speedometer indicated that the car had been driven 60,324 miles; that in making the repairs he found "loose bearings, *411 loose pins, one broken piston, and many other things. * * * We replaced broken piston, replaced all bearings, pins and cauterized or expanded the piston, * * * and ground the valves. * * * The cylinder walls were oversized, the shaft was undersized. * * * The car should have had a rebuilt or a new motor." He found excessive wear in the engine and other moving parts of the car which would affect its efficient operation; and it was his opinion that those conditions existed when plaintiff purchased the car. We need not detail at greater length the worn out and defective parts found by Carter because defendants do not contend that the car had been through their shop and was in perfect or first-class mechanical condition. In fact, defendants' general manager testified that the car had not been through their shop.
From his examination of the motor and of various operating parts of the car, Carter gave it as his opinion that the car had been driven in excess of 100,000 miles. On cross-examination he admitted that no one could tell definitely the number of miles the car had been driven by such examination; that there was an element of guess and speculation as to the actual mileage the car had been driven.
Carl Hayden testified on behalf of defendants and admitted that he worked for Dependable Motors and made the sale to the plaintiff, but denied that he made any representations concerning the mileage the car had been driven or that the car had just been through the shop and was in perfect mechanical condition. He stated that he told the plaintiff the brakes "weren't too good" and the "clutch was slipping a little," and that while he and the plaintiff were driving the car the plaintiff discovered the condition of the brakes and the clutch.
It appears from defendants' evidence that the Kansas City Tire Company acquired this car on December 4, 1945, for use by its employees; that it was a used car; that its employee, Harry Smith, had driven the car approximately 18 months, during 1947 and 1948, a distance of 25,000 to 30,000 miles, and that another employee, Mr. Frees, had driven the car several months before Smith started to drive it, and that his and Smith's duties were similar.
Other witnesses testified for both the plaintiff and the defendants concerning the value of the automobile at the time of the sale, but we need not detail that evidence because it is not pertinent to the issues raised on appeal.
Defendants (respondents) contend that the court should have sustained their motion for a directed verdict at the close of all the evidence because there was no submissible case made. If this contention is sound, then it will be unnecessary to consider the correctness of plaintiff's instruction No. 1.
Defendants argue that before plaintiff purchased the car he knew that (a) the heater was not connected; (b) that the clutch was "slipping a little"; (c) that the engine did not develop much speed when going up hill; (d) that the hand brake was disconnected, and (e) that the foot brake was not working efficiently. Plaintiff admitted that he knew the heater was not connected, but we do not consider that of any importance because it is a well known fact that heaters are frequently disconnected during the summer. Plaintiff also admitted that he knew the hand brake was not connected, and that the foot brake was not working efficiently but needed to be "pumped," and he also knew that the car did not pick up speed when going up hill, but was told by the defendants' agent that this was due to the clutch "slipping a little and needed a minor adjustment," which they promised to do but did not.
Defendants contend that with knowledge of these mechanical conditions the plaintiff, as a matter of law, had the burden of determining for himself the true condition and facts as to all representations, and if he failed to do so he must suffer the consequences. In other words, with the information plaintiff had concerning the condition of the car, he had no right to rely upon any representations made by the defendants.
Defendants admit they have found no Missouri case specifically ruling the point under the circumstances presented in the instant case, but they cite Carpenter v. Hamilton, *412 18 Cal.App.2d 69, 62 P.2d 1397, and Morel v. Masalski, 333 Ill. 41, 164 N.E. 205.
In the Carpenter case the plaintiff sued for damages for false representations concerning the condition of a residence and garage he was purchasing from defendant. He claimed that the defendant represented that the house and garage were in good condition and were not in need of painting or repair of any kind; that the walls were in good condition; that the floors were absolutely level; that the house had a new roof; and that the garage also had a new roof. The evidence was that such representations were not true. However, the plaintiff had inspected the house on four different occasions and had employed a man to make an inspection for dry rot and termites, both of which were found and reported to plaintiff; that before he made the purchase he learned that at least some of such representations were not true. The court held, under the facts, that the purchaser had no right to rely upon the representations because he chose to inspect the property and in so doing, learned that some of said representations were not true and that by reasonable diligence he could have learned that the other representations were not true and, therefore, he had not been misled. However, the court recognized the rule of law that a buyer is not required to employ experts to investigate matters of a technical nature of which the seller has full knowledge and of which the buyer is ignorant, and if for this reason the investigation is incomplete, the buyer may show that he relied upon the representations relative to matters which he did not investigate. We think that principle is particularly applicable to the facts in the instant case. The material defects in this car were in the engine and other concealed operating parts, which defects could not be ascertained except by dismantling the engine and other parts of the car. Certainly, no purchaser of a car is required to take such steps in order to protect himself against false representations made by the seller.
In the Morel case the alleged false representation pertained to the assessed value of the property which plaintiff was buying, and what the assessed valuation would be in the future. The court held that the purchaser had no right to rely upon such representation because he was charged with the knowledge that the "board of review" had the right to change tax assessments from year to year.
Those two cases are not applicable to the facts in our case. Of course, it is true that where a party fails to avail himself of means of knowledge readily within his reach he cannot complain if he is defrauded. Weitzman v. Weitzman, Mo.Sup., 156 S.W.2d 907. But this rule does not apply where the defects are latent and are not readily discoverable.
It is our conclusion that the plaintiff had the right to rely upon the representation that the car had been through the shop and was in perfect mechanical condition; and that the evidence made a submissible issue of fraud on this representation.
Defendants next contend that there was no substantial evidence that the car had been driven more than 60,000 miles and, therefore, no submissible issue was made on this representation. It is unnecessary for us to review the evidence and decide this contention because the instruction submitted, in the conjunctive, the question whether defendants represented to plaintiff that the car "was then in first-class mechanical and operating condition, ready for immediate and constant service for the purposes plaintiff desired it, * * * and that the automobile had been driven only a little over 60,000 miles, * * *." Both representations were of an existing material fact; Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, 1086; Marquis v. Pettyjohn, Mo.App., 212 S.W.2d 100, 104; and if the evidence supported either representation, then it is immaterial whether the evidence was sufficient to support the other. The rule is that if an instruction submits, in the conjunctive, two or more grounds for recovery and the evidence supports only one, the instruction is not erroneous, because the plaintiff has assumed an unnecessary burden in annexing the other issue or issues. Tash v. St. Louis-San *413 Francisco R. Co., 335 Mo. 1148, 76 S.W. 2d 690, 698; Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 99; Wolfson v. Baltimore Bank of Kansas City, Mo. App., 157 S.W.2d 560, 566; Spencer v. Kansas City Public Service Co., Mo.App., 250 S.W.2d 187, 191.
We now consider the correctness of plaintiff's instruction No. 1. The trial court, in its order sustaining the motion for new trial, did not specify any particular error or errors in the instruction, but defendants (respondents) contend that it is erroneous because it does not require the jury to find certain essential elements of fraud. The most recent comprehensive statement of the essential elements of fraud is found in Lowther v. Hays, Mo.Sup., 225 S.W.2d 708, 713. They are: (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon. Many other cases have stated, in substance, the same essential elements. See Menke v. Rovin, 352 Mo. 826, 180 S.W.2d 24; Westinghouse Electric Supply Co. v. Binger, Mo.App., 212 S.W.2d 445; Nash v. Normandy State Bank, Mo. Sup., 201 S.W.2d 299.
It is first contended that the instruction does not require the jury to find that the representations complained of were material. The instruction does not use the word "material" but it has been held that representations with reference to certain latent mechanical conditions of an automobile are "representations of existing matterial facts * * *"; Marquis v. Pettyjohn, supra, 212 S.W.2d 104. The instruction did require the jury to find that the representations complained of were made; that they were false, and that plaintiff relied thereon. We do not believe it was necessary that the instruction specifically require the jury to find that the representations were "material" in view of the fact that it required the jury to find facts which, if true, constituted a "material representation."
It is next contended that the instruction did not require the jury to find that the defendants intended such representations be acted upon by the plaintiff and in the manner reasonably contemplated. There is no merit in this contention. The instruction required the jury to find that the defendant, Dependable Motors, was in the business of selling new and used cars; that plaintiff presented himself at its place of business and told them he desired to buy a second-hand car for use and of about a certain value; that he was shown a Plymouth car; that certain representations were made concerning the same; that said representations were false; that he relied thereon, and that defendants knew said representations were false or made them in ignorance of their truth. If the jury found these facts, there could be but one conclusion: that defendants intended that the plaintiff act upon such representations. They could have been made for no other purpose.
It is also contended that the instruction did not require the jury to find that the plaintiff was ignorant of the claimed false representations and that he had a right to rely thereon. In addition to the facts to be found by the jury, as mentioned above, the instruction also required the jury to find "that plaintiff was not mechanically inclined or qualified to judge the mechanical condition of said automobile," and that "plaintiff purchased said automobile * * * and relied upon said statements and representations of said defendant * * *." We think this language is equivalent to requiring the jury to find that the plaintiff was ignorant of the falsity of such representations. It clearly required the jury to find that he relied thereon. Furthermore, defendants' instruction VIII advised the jury that even though it may be found that defendants represented the car to be in perfect mechanical condition and to have been driven only approximately 60,000 miles, nevertheless, if the jury found that the plaintiff did not rely *414 upon such statements but that he knew said vehicle was not in perfect mechanical condition and was in need of repair to the clutch, brakes and to the motor, then the verdict should be for the defendants. When the two instructions are read together, there can be no doubt the jury was properly instructed on this issue.
Defendants also contend that the instruction submitted facts to the jury which were contrary to the evidence and not supported by the evidence. They refer to this language in the instruction: "* * that on or about the 10th day of May, 1949, plaintiff presented himself at defendant's place of business * * * to inspect used cars of defendant and desired to purchase a used automobile for immediate and constant use in driving between his home and work and pleasure driving, without breakdowns and mechanical trouble in said automobile, * * *." There is no specific evidence that plaintiff stated he was purchasing the automobile for immediate and constant use in driving between his home and work and pleasure driving. There is evidence that he was the owner of an old car at the time of the trade; that he was employed as a postal clerk at the post office; that he wanted to purchase a different kind of car than the one he had; that he told the defendant's agent that he had to take his wife to the hospital and then go to work; that he drove the car before he purchased it to see how it operated (all of which the defendants knew), and after the purchase he drove it in and around Kansas City and made two trips to Nevada, Missouri, and one trip to Independence, Kansas. It is a well known fact that automobiles are purchased to drive for pleasure and for business, they serve no other useful purpose. It is our conclusion that including the above quoted language in the instruction was not prejudicially erroneous. It was not an essential element of plaintiff's cause of action.
It is also argued that the instruction is erroneous because it required the jury to find that the car "was well worth the asking price of $550" when there was no evidence to support that statement. On this matter plaintiff testified that the agent told him the car was selling for $550 and would be "a dandy little buy for me" at that price. We think the latter statement is equivalent to saying the car is "well worth the asking price of $550." There is no merit in this contention.
It is next contended that the instruction is erroneous because it required the jury to find that defendants knew that the car "had been driven in distance at least 100,000 miles." It is argued that there is no substantial evidence that the defendants knew the car had been driven at least 100,000 miles. This issue was submitted conjunctively with the issue of the false representations concerning the mechanical condition of the car and, if the defendants had knowledge of the mechanical defects, then it was immaterial whether they had knowledge of the distance the car had been driven because, as stated above, the plaintiff was assuming an unnecessary burden in submitting that issue. On the issue of knowledge the record discloses that the Tire Company had owned and operated the car approximately three and a half years before it was sold to plaintiff; that it was a second-hand car at the time it was bought; that it had been purchased for the use of the company's employees, and Mr. Mayhan, the general manager of defendant, Dependable Motors, testified that he examined it when it was brought on the second-hand car lot for sale (in January, 1949) and found that the hand brake and the foot brake were "not in proper working condition," and that the car had never had any work done on it in their shop. There was ample evidence to submit the issue that the defendants knew that the car was not in first class mechanical condition.
Defendants apparently believe that, because the instruction required the jury to find that the defendants knew that the representations were false or that they were made without knowing whether they were true or false, converts the submission of the grounds of fraud from a submission in the conjunctive to a submission in the disjunctive, and seek to apply the principle that when several grounds of liability are *415 submitted in the disjunctive there must be evidence to support all of such grounds. That principle has no application in the instant case because the grounds of fraud were submitted in the conjunctive. If the defendants knew that any one of such representations was false or if they recklessly made any one of said representations without knowing whether it was true or false, then they would be liable for having made that representation. For cases discussing this question, see 13, Mo.Dig.Fraud Defendants cite Martin v. Springfield City Water Co., Mo.App., 128 S.W.2d 674. An examination of that case will disclose that the grounds for recovery were submitted in the disjunctive and the court properly held that there must be evidence to support all such grounds. There are a multitude of cases in this state holding to the same effect but they are inapplicable in the instant case because the grounds of fraud in this instruction were submitted in the conjunctive.
We think the court erred in sustaining the motion for new trial.
The order is reversed and the cause remanded with directions to the trial court to reinstate the verdict and enter judgment thereon as of the date of the verdict.
All concur.