Nathan R. SHECHTER and Ruth
Shechter, Respondents,

v.

Merl L. BREWER et al., Appellants.

No. 23135.

Kansas City Court of Appeals.

Missouri.

March 6, 1961.

Wm. Coleman Branton, James E. Grier, Kansas City, Brewer, Myers & Branton, Kansas City, of counsel, for appellant Merl L. Brewer.

Barnes Griffith, Jack N. Fingersh, Kansas City, Brown & Koralchik, Kansas City, of counsel, for respondents.

CROSS, Judge

In this action plaintiffs, Nathan R. Shechter and Ruth Shechter, sue defendant Merl L. Brewer, a real estate agent, for damages claimed as a result of alleged false representations made in the sale of a house. Defendant Brewer appeals from the judgment entered on a jury verdict for $2,500 in favor of plaintiffs.

The owners of the house, Frank R. McDermand III and Mariel McDermand, were also named as defendants in the petition. Summons was never served upon defendant Mariel McDermand, and the petition was dismissed as to her before the trial. During

the trial, and at the conclusion of plaintiffs' evidence, a verdict was directed in favor of defendant Frank R. McDermand III, and he was dismissed from the case as a defendant.

The essential complaint in the petition is that defendant Brewer, in negotiating the sale of a house to plaintiffs, falsely stated, through employees, in response to specific inquiry by plaintiffs, that the foundation was in good condition, had never settled and had never been repaired; that plaintiffs had no knowledge in the premises, relied on the statements and bought the property; that shortly after taking possession, plaintiffs discovered that the foundation had deteriorated and settled and had been repaired before the negotiations, was in the further process of settling and deteriorating at the time of the negotiations and when the statements were made, and, that after the sale, the foundation continued to settle and deteriorate; that the defendant's false statements were material, were known by defendant to be false, were wilfully and recklessly made to induce the sale, and were relied upon by plaintiffs, to their damage. The case was submitted to the jury on evidence and instructions conforming to the issues raised by the petition.

Defendant's first assignment is that the trial court should have directed a verdict in her favor at the close of all the evidence because (1) plaintiffs failed to prove they were damaged, and (2) plaintiffs failed to prove they had a right to rely on defendant's representations.

In determining the sufficiency of the evidence on those issues, we shall assume as true every fact and circumstance in plaintiffs' favor shown in evidence, and give plaintiffs the benefit of all reasonable evidentiary inferences. All evidence and inferences unfavorable to plaintiff will be disregarded.

Treating the immediate questions in inverse order, we first consider whether plaintiffs proved their right to rely on defendant's representations. From a lengthy transcript we extract these facts:

The physical subject of this law suit is a house owned by Mr. and Mrs. McDermand, former defendants. They bought it in 1953 and sold it to plaintiffs in 1957. They testified that they had "foundation trouble" in that the foundation had undergone sinking and settlement. That process produced cracks in the house, both exterior and interior. The McDermands had the foundation repaired by Young Construction Company. "They" put down concrete piers. "These concrete piers were driven down and footings put underneath the foundation and the house placed upon those new piers". The McDermands listed the house for sale with defendant Brewer in January, 1956. Mr. McDermand told defendant's employee, O'Brien, that the house had been repaired for settlement damages. O'Brien inquired and was told by Mr. McDermand that Young Construction Company had done the work. Both Mr. and Mrs. McDermand told defendant's employee Ben Heller that the house had been repaired for the settlement damage. Heller admitted: "Mrs. McDermand told me there had been some repairs made in the basement and had a guarantee for the repairs made".

In December, 1956, plaintiff Nathan R. Shechter, a physician, and Ruth Shechter, his wife, decided to buy a house and contacted the "Merl Brewer Realty Company". Defendant's employee Ben Heller was assigned to the Shechters and showed them about twenty-four homes before showing them the McDermand house. Plaintiffs were "foundation conscious", and were trying to buy a home which had suffered no foundation trouble. When shown a house by Mr. Heller, they always asked first about whether there had been foundation trouble or repair. Prior to the McDermand transaction, Mr. Heller always answered freely and never hesitated to discuss the subject. "He had no hesitancy in answering whether they were good, bad or indifferent".

Heller showed plaintiffs the McDermand house first to Mrs. Shechter in March, 1957. She saw only two conditions which prompted inquiry—a long crack in the basement floor that had obviously been filled in, about two inches wide, and a thin hairline wall crack upstairs, about fourteen inches long. The foundation walls were clean, smooth and white, with no cracks that could be observed. She saw no cracks in the floor other than the one long one. Pursuant to Mrs. Shechter's question, Heller told her the crack in the basement floor was "due to the expansion under certain weather conditions, that concrete will crack and buckle and this was a result of that". She asked him if the crack indicated any foundation trouble. He answered that it did not. Mrs. Shechter asked Heller if the foundation had ever been repaired. Heller answered that the foundation was in sound repair and had not been repaired. When Mrs. Shechter asked Heller what caused the crack upstairs, he said it was just an ordinary plaster crack that had nothing to do with any foundation trouble. Later Dr. and Mrs. Shechter returned together with Mr. Heller for another inspection of the house. Dr. Shechter saw the long crack in the basement floor that had been filled, but saw no other cracks in the basement floor, basement walls, or in the walls upstairs. The first question Dr. Shechter asked was whether the foundation had been fixed. Heller emphatically stated that the foundation had not been repaired and that the crack in the floor was due to expansion of the concrete, that you get it in any home that has concrete in it. He said the foundation had never been fixed by putting pillars under the house, but just by fixing the crack in the floor. Dr. and Mrs. Shechter proposed to call in Joe Hoffman, a home builder, to inspect the house for them, but Heller became angry and told them that if they did so he would not sell them the house. They testified they relied upon the statements made by Heller and considered them as statements of fact, as representations of fact, and not as advice and comment, and purchased the house on May 31, 1957.

On behalf of defendant, Ben Heller testified: "Dr. and Mrs. Shechter as has been testified were very conscious of the condition of the foundations, building and construction due to the drought conditions in the Kansas City area and asked me on many occasions the condition of the various homes at which we looked" * * * "Mrs. McDermand told me there had been some repair made in the basement and had a guarantee for the repairs made". He told the Shechters the foundation was in good shape because the basement walls "were in obvious good condition".

The foregoing evidence justifies a jury finding that the foundation had suffered extensive damage from settling and that it had undergone major repairs. The jury was privileged to believe that defendant and her two agents, O'Brien and Heller, had full knowledge of those facts. The jury could further find that Heller deliberately and falsely told plaintiffs there had been no settlement damage and no foundation repairs when he knew the truth to be otherwise. Those conclusions, if so reached by the jury, amount to a finding that defendant's agent committed intentional fraud on plaintiffs to procure the sale.

In arguing this point, defendant asserts no absence of fraud, but insists that plaintiffs should have been more diligent in its presence. She says that plaintiffs were not entitled to rely upon "those representations" of her agent, and argues that even if material fraudulent misrepresentations were made by him, plaintiffs had no business believing them, "for the law will not allow respondents to ignore what they plainly saw and knew when they made their inspection".

■ Defendant takes this position under the general rule that a person to whom false representations have been made is not entitled to rely on them if he could have discovered the truth by exercising ordinary

care and prudence, particularly when the means or knowledge are at hand and equally available to both parties, as stated in Hanson v. Acceptance Finance Co., Mo.App., 270 S.W.2d 143, and other Missouri cases. We recognize that broad rule of generality, but cannot accept it without giving effect to other rules and to interpretations which qualify and temper its application.

The tendency of modern decisions is not to extend, but to restrict the rule requiring diligence, and similar rules, such as *caveat emptor,* and the rule granting immunity for dealers talk; to condemn the falsehood of the fraud feasor rather than the credulity of his victim. It is so declared by Missouri courts. See Monsanto Chemical Works v. American Zinc, Lead & Smelting Co., Mo. Sup., 253 S.W. 1006; Aven et al. v. Ellis, 334 Mo. 449, 66 S.W.2d 828; Cantley v. Plattner, 228 Mo.App. 411, 67 S.W.2d 125; 37 C.J.S. Fraud § 30 p. 274. Since the very purpose of fraud is to cheat its victim by making him neglect the care essential to prevent injury, to deny relief because the victim was negligent would encourage the evil. A tort-feasor will not be heard to say that he is a person unworthy of belief and that plaintiff was negligent in trusting him and was cheated through his own credulity. Conroy's Inc. v. Ratz, Mo.App., 14 S.W.2d 465; 37 C.J.S. Fraud § 30, p. 274. Nor will defendant here be heard to say that plaintiffs have no rights as victims of fraud because they were negligent in their credulity.

A person to whom representations are made is entitled to rely on them when he lacks equal facilities for learning the truth; where the facts are peculiarly within the knowledge of the speaker and are difficult for the hearer to ascertain; where the misrepresentations relate to latent defects; where, because of the hearer's ignorance and inexperience, it would be necessary to employ a third person to make an examination in order to learn the truth; and, where the employment of an expert would be required. See 37 C.J.S. Fraud § 30 p. 279; Bertram v. Kempster, Mo.Sup., 216 S.W.2d 494; Long v. Freeman, 228 Mo.App. 1002, 69 S.W.2d 973; Wolf v. Kansas City Tire & Service Co., Mo.App., 257 S.W.2d 408; Nixon v. Franklin, Mo.Sup., 289 S.W.2d 82; Judd v. Walker, 215 Mo. 312, 114 S.W. 979; Conroy's Inc. v. Ratz, supra; Kearns v. Sparks, Mo.App., 260 S.W.2d 353.

In this case the Shechters had the right to rely on Heller's statements (which we view as representations and not as opinions), because they lacked equal facilities for ascertaining the truth. The fact of the accomplished repairs was peculiarly within the knowledge of Heller and not readily available to them. The representations related to latent defects, such that could only be ascertained by employing a third person, an expert skilled in foundation construction and repair. Any foundation defects or repairs were hidden from view. The only observable defect in the basement was a floor crack, which had been filled. Heller told them the crack was due to expansion caused by weather conditions. No cracks or defects could be seen in the foundation walls. It would have been necessary to excavate and explore the foundation structure in order to learn what Heller already knew. "Certainly, no purchaser * * is required to take such steps in order to protect himself against false representations made by the seller". Wolf v. Kansas City Tire Service, supra [257 S.W.2d 412].

The general rule that a party must be diligent to learn the truth of representations has no application "where the alleged fraud-feasor fraudulently induces his adversary to refrain from inquiry, as where the fraud-feasor has, or by calculation and artifice obtains, the confidence of the other and causes him to forego the exercise of caution". Wood v. Robertson, Mo.Sup., 245 S.W.2d 80, 84. In this case, Heller showed 24 homes to plaintiffs. He invited their confidence by willing discussion of the foundations of those structures. In some instances he informed plaintiffs of foundation defects. The jury could believe the Shechters had been disarmed and made

credulous by Heller's prior course of dealing and were entitled to rely on his statements.

The case was properly submitted on the issue of plaintiffs' right to rely on defendant's representations.

We next consider the sufficiency of the evidence to prove that plaintiffs sustained damage. Plaintiffs and defendant agree that the proper measure of damages applicable to this case is the "benefit of the bargain" rule—the difference between (1) the actual value of the property at the time it was purchased and (2) what its value would have been if defendant's representations had been true. There is no dispute about the represented value which defendant places at $44,000, the agreed purchase price. Defendant contends that because the actual, visible manifestation of foundation settlement did not appear until October, 1957, there was no proof that the house had settled or was in the process of settling when plaintiffs bought it; and, that plaintiffs' evidence is too remote in point of time to show that the *actual* value of the house on May 1, 1957, the date of purchase, was less than its *represented* value, inasmuch as their evidence on the question related to a later time, i. e. October, 1957, and January, 1958. We return to the evidence.

When plaintiffs inspected the house there were no signs of repair, visible to them, except the floor crack which was represented to be the result of expansion. The walls had been coated white and showed no cracks. The foundation looked to be in good condition and as Heller represented it. We think those facts bear more upon the *appearance* of the structure on May 1, 1957, than its *condition* of stability and soundness. That factor will be determined under all the evidence.

Plaintiffs moved into the house August 1, 1957. About a month and a half later, after heavy rains, the basement wall finish began to peel off. Plaintiffs then saw cracks in the foundation walls which had been filled with some plaster or filler substance and covered over with the white finish. There were additional cracks in the basement floor, which was coming apart from the basement wall. That condition worsened. The wall was separated all the way around the house from the basement floor. Additional cracks developed and the old cracks widened. Plaintiffs have had the cracks filled and had to have the basement pillars leveled off to level the house. They filled the separation between the basement floor and wall. The present condition "today" is "that the cracks are continuing to show and are extending further, even where filled at the juncture of basement floor and wall". Plaintiffs had trouble with the doors upstairs and weren't able to open them without scraping the floor, and the top of the door. All had to be leveled and sanded off to fit. Additional basement floor cracks have developed. Various new cracks have come in the walls. Cracks have developed on the outside of the house and show around the doorways and under the living room window and across the other side to the study window. The outside front step has receded from the house and there is a separation where the wood frame of the house joins the bricks. The living room fireplace has moved an inch away from the wall. There is an opening between the floor and the brick wall. The molding around the ceiling and walls is coming apart.

In October, 1957, after discovering the foundation trouble, plaintiffs called in Billy Shelton, a foundation repairman. Upon inspection he found the foundation wall had settled a substantial distance below the basement floor. He also discovered evidence of previous foundation repair. At plaintiffs' request he submitted an estimate, in the sum of $4,785 as the cost of correcting the trouble. He stated that it would be difficult to determine how long that condition of the foundation had existed; that it could have been for two months or for two years.

Don Renne, another foundation man called by plaintiffs, also inspected the foun-

dation. He discovered that it had settled and found various cracks in its walls. He stated that settling is a slow process; that "it doesn't just shrink all at once", "that it would take longer than a year". The effect of drought in shrinking and compacting the soil does not cause immediate and noticeable foundation settling. It can occur for a long period of time without evident effect on the foundation. It cannot be told by looking at a foundation whether or not it is going to settle "tomorrow or a week from today or a month from now or a year from now".

Plaintiffs engaged the services of Joe Hoffman, a home builder, in early January, 1958, at which time he built some cabinets and lowered the center piers of the house to level the floors. In checking for needed repairs, not for the purpose of appraisal, he observed that the foundation had settled and caused structural damage. Hoffman testified he had built several hundred houses, a third of which he built for sale and were sold directly by him. It was his opinion, on the basis of his experience, that the foundation condition he observed must have existed for a year; that the value of a house is adversely affected by making repairs on its foundation. Taking into consideration the fact that the foundation had settled and been previously repaired, together with the structural damage he observed, Hoffman stated that in his opinion the value of the house in the condition he observed in January, 1958, was $39,500.

■ As the triers of fact, the jury could reasonably believe from the testimony of the foundation experts that on the very day of the sale the foundation was in an incipient stage of sinking *for the second time*— that the supporting soil had compacted and shrunk away from the greater area of the footing surface bearing upon it, thus leaving the foundation supported *only until torsion stresses finally overcame the tensile strength of its materials*. The jury having so found, it was their duty to determine the value of the house on May 1st in its actual condition of hidden damage and structural weakness—not as it deceptively appeared to be.

■ Defendant says that plaintiffs failed to establish that the actual value of the house on May 1, 1957, was less than the represented value because their evidence on the question related to later dates i. e., October, 1957, and January, 1958. It is true that the measure of damages must relate to the time of sale and that any pecuniary loss must be computed as of that date. The jury was so instructed. However, it is not incumbent upon plaintiffs that their evidence on the question shall have had its genesis on the day of fraud.

For the purposes of plaintiffs' proof, it was inconvenient that their damage did not become apparent until October—two months after moving into the house, and five months after the sale. It would have been far more propitious had the foundation cracked and dropped at the time it was the subject of discussion—or had given way on the day following the sale. Evidence readily procurable then would have been completely assault-proof. However, in the ordinary course of affairs, fraud victims do not usually discover their predicament until some time after they have been deceived. In these circumstances courts are not prone to be overly critical of the evidence produced to prove the damages resulting from the wrong. Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person and thereby relieve the wrongdoer. He is not entitled to complain that the damages cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544.

■ Missouri courts follow the rule that where it is certain damage has resulted, uncertainty as to amount will not preclude recovery. If the damages are not capable of exact measurement, all that is required is that the evidence, with such certainty as the nature of the case will permit, shall lay a foundation which will enable the trier of the fact to make a fair and reasonable estimate. Plaintiff will not be denied if (a) he has produced the best evidence available and (b) it is sufficient to afford a reasonable basis for estimating the loss. Blackburn v. Carlson Seed Company, Mo.App., 321 S.W.2d 520, loc. cit. 523.

In Dick v. Puritan Pharmaceutical Co., Mo.App., 46 S.W.2d 941, 945, the following is stated: "Surely one suffering injury from such a fraud as the evidence shows was perpetrated upon the plaintiff ought to be fully recompensed therefor, and the party perpetrating the fraud ought not be heard to say that plaintiff is not entitled to have full recompense for the damage he has actually suffered, because, from the nature of the case, he is unable to show with exact certainty the amount of his loss. It is essential only that the damages be shown with reasonable certainty." See Northcutt v. St. Louis Public Service Company, Mo. App., 48 S.W.2d 89, and cases cited; also, City of Kennett v. Katz Construction Co., 273 Mo. 279, 202 S.W. 558.

■ The general rule respecting the "time" to which evidence must relate in proving real estate value is stated in 31 C.J.S. Evidence § 182, p. 891, as follows: "Evidence on an issue as to the value of real estate, in order to be relevant, must relate to the time as of which the value of the property is to be determined, or to a time so near thereto that it may reasonably throw light on the value at such time;". We find no Missouri case restricting that doctrine. It is not contradicted by Mc-Farland v. Cobb, Mo.Sup., 64 S.W.2d 931, cited by defendant, which states the rule we are following—that value (not evidence of value) must be shown as of the date the wrong was committed.

■ It appears that the jury's assessment of damages was made with reasonable certainty, from the best evidence obtainable under the circumstances, and from evidence reasonably proximate in time. The award was adequately supported by Billy Shelton's estimate of repair costs in the sum of $4,785 made in October, 1957, and by the opinion of Joe Hoffman that the actual value of the house, with a defective foundation, such as he observed in January of 1958, was the sum of $39,500. Under the testimony of Billy Shelton the damages could have been assessed at $4,785. The jury might have awarded $4,500 under Joe Hoffman's evidence. Since the verdict is for $2,500 it is well within the limits of the evidence which justified its return.

■ Defendant next complains that the trial court erred in excluding defendant's inquiry of Dr. Shechter as to whether he had claimed a 1957 income tax return deduction on account of foundation casualty loss. The question, the objection to it, and the court's ruling are as follows:

"Q. Dr. Shechter, have you made a claim for this (foundation) loss on your income tax return?

"Mr. Griffith: I object to that as being irrelevant and immaterial, Your Honor.

"The Court: That will be sustained."

In answer to the question, repeated out of the jury's hearing, the witness stated he had claimed the deduction. The court denied defendant's offer to ask the question and elicit the answer in the jury's presence. In claiming prejudicial effect from the exclusion of that evidence, defendant insists that the fact of the deduction claim was either an admission against interest or a prior inconsistent statement, or both, admissible as such. Defendant argues that the deduction claim is contradictory of plaintiffs' testimony that the foundation was in

poor condition and had been settling prior to the date of purchase. Defendant says that by claiming the deduction plaintiffs admitted that they were owners of the property at the time the loss occurred, and that the loss was sudden—not the result of gradual foundation settlement. This argument is made under defendant's view of the Federal tax laws.

We recognize the rule that any logically probative evidence (including admissions) is competent and generally admissible. However, the basis of admissibility and competency of an alleged admission is its character or quality of inconsistency with the facts presently claimed by the party making the statement. Albertson v. Wabash Railroad Company, 363 Mo. 696, 253, S.W.2d 184.

What inconsistency arises from the act of making the deduction claim? How does that act constitute an admission that the house was sound when plaintiffs bought it? There is nothing inherent in the act of seeking recoupment of their loss that contradicts plaintiffs' testimony in the case. Whether the claim was contradictory would depend upon (1) an interpretation of the Federal tax laws and regulations, and (2) the understanding placed upon those laws and regulations by Nathan Shechter.

Defendant realizes that a complex legal controversy is involved in determining whether the claim constitutes an admission against interest. In her brief she states: "To fully understand the implications of appellant's contention, it might be helpful to set forth the requirement for the claim of a casualty loss as a tax deduction * * " That statement is followed by citations and quotations from the Internal Revenue Code, from CCH Tax Reporter and from Mertens, Law of Federal Income Taxation.

If the foregoing voluminous legal authority is necessary for our understanding of the significance of the deduction claim, then what would be necessary for the jury to understand it? It is apparent that if the

trial court had permitted the jury to be informed of the claim, an entire new controversy then arose. It would have been Nathan Shechter's right to present to the jury his version and understanding of the tax laws—to be rebutted by defendant in her turn. It is conceivable, in view of the confusing nature of income tax laws, regulations and interpretations, that the "new" controversy might have dominated the whole trial and subordinated the real issue in the case.

The law has wisely invested the trial court with discretion to deal with these situations. "If evidence pertaining to collateral matters brings into a case new controversial matters which would result in confusion of issues, constitute unfair surprise or cause prejudice wholly disproportionate to the value and usefulness of the offered evidence, it should be excluded". Conley v. Kaney, Mo.Sup., 250 S.W.2d 350, 353; Jones v. Terminal Railroad Association of St. Louis, Mo.Sup., 242 S.W.2d 473; McComb v. Vaughn, 358 Mo. 915, 218 S.W. 2d 548; Wigmore, Evidence, p. 458.

Believing the trial court wisely exercised his discretion by excluding evidence relative to the tax matter, we find that no error was committed.

Defendant contends that the trial court erred in granting plaintiffs' verdict-directing Instruction No. 1 for the reason it contained no requirement that the jury find that plaintiffs had a right to rely on defendant's representation. It is true that a verdict-directing instruction must hypothecate every fact essential to a recovery, and that in this case it was necessary for the jury to determine from the facts in evidence whether plaintiffs had the right to rely on the false statement. However, it was not necessary that such issue be stated in the instruction in those precise words. The instruction required a finding of every fact necessary to make a case of fraud. Those findings, in themselves, necessarily amount to a finding that

the right to rely was present. When the jury found the facts to be as hypothecated in the instruction, *a legal conclusion arose that plaintiffs were justified in their reliance on the representation*. The right of reliance, as a legal principle, is founded on a factual showing that the injured party used reasonable care, under the circumstances, to learn the truth of the representation. That issue was fully submitted in the instruction.

■ If there was any quantum of vagueness in the instruction it was completely cured by defendant's Instruction No. 4, which required the jury to find "That plaintiffs had a right to rely thereon * * *", and by defendant's Instruction No. 6 on credibility, which admonished the jury to consider "all the facts and circumstances in evidence". We so rule under specific authority of Monsanto Chemical Works v. American Zinc, Lead and Smelting Co., Mo.Sup., 253 S.W. 1006, and Meyer v. Brown, Mo.App., 312 S.W.2d 158—fraud actions in which this precise question was determined. The contention has no merit.

■ Complaint is also made of plaintiffs' Instruction No. 3 on the ground that it is abstract, broadens the issues and is confusing and misleading. The instruction is as follows: "The Court instructs the jury that the defendant, as employer, is liable for the wrongful acts of her agents and employees which were done in the ordinary course of their employment". The instruction is subject to criticism. It is an abstract statement of the law and is disfavored by courts. However, the instruction correctly states the law and is accompanied by other instructions which properly apply the law to the facts. Under those conditions it was not reversible error

to grant it. See Baker v. Aetna Casualty & Surety Co., Mo.App. 193 S.W.2d 363; Thornton v. Union Electric Light & Power Co., 230 Mo.App. 637, 72 S.W.2d 161, and Christman v. Reichholdt, Mo.App., 150 S. W.2d 527.

■ Defendant further assigns error in the trial court's refusal of defendant's Instruction "A", which reads as follows: "You are instructed that if Ben Heller represented to plaintiffs that the foundation of the home in question was good, or was in excellent condition, without more, it was a mere expression of opinion on his part, and would not constitute a ground for the allowance of damages in case the same was untrue". The instruction was properly refused. It is a misstatement of the law applicable even to the facts it incorporates. The statement of Heller that the foundation was in good or excellent condition, as hypothecated in the instruction, would have supported the verdict under all the evidence. Further, it ignores the evidence that Heller stated knowingly and falsely that the foundation had not been repaired. Clearly, it would have been error to grant the instruction.

■ Defendant makes the final point that the trial court erred in dismissing the defendant Frank R. McDermand III from the cause at the close of plaintiffs' evidence. No legal grievance has been suffered by defendant as a result of her codefendant's dismissal. Schneider v. Campbell, 66 Express, Inc., Mo.App., 324 S.W.2d 363; Brickell v. Fleming, Mo.Sup., 281 S. W. 951; Stutte v. Brodtrick, Mo.Sup., 259 S.W.2d 820. The point is without merit.

The judgment is affirmed.

All concur.