Charles A. MILLER, Respondent,

v.

Herbert JOHNSTON, Appellant.

No. 22906.

Kansas City Court of Appeals.
Missouri.

May 4, 1959.

Don C. Carter, Sturgeon, for appellant.

Roy D. Williams, Boonville, for respondent.

HUNTER, Judge.

This appeal involves a dispute between the owner of a farm and his lessee-partner as to what each owes the other under their oral contract.

On March 29, 1954, plaintiff-respondent, Charles A. Miller, sued defendant-appellant, Herbert Johnston, alleging a contract in writing involving a farming partnership between them (about which there is no dispute), and, additionally, a verbal farming partnership contract between them covering from 1951 to January 15, 1954. According to the alleged verbal contract, defendant rented a certain farm near Boonville, Missouri, that he owned to plaintiff on a partnership basis, with the partnership work to be performed and shared by each of the parties. The petition alleged a refusal on part of defendant to make settlement or to carry out the partnership agreement, stated defendant was indebted to the plaintiff in the sum of $7,843.52 and asked for an accounting. Defendant filed a general denial thereto and counterclaimed in the sum of $3,182.42 for certain specified work he allegedly performed in connection with the farm in question.

On June 8, 1956, the case was tried to the court as jury waived. The parties stipulated at the trial that defendant owed plaintiff $362.12 as "the amount of farm expense,

actual cash carried over from the end of 1953." They also stipulated that they owned in partnership one offset disk and a self-propelled combine. They asked the court to make an order of sale of those two articles and to divide the proceeds between them. According to the record the combine was sold at a public sale, and the net sum of $596.20 was paid to the clerk of the court. The record is silent as to what, if anything, occurred to the mentioned disk.

As to their claims and contentions, plaintiff testified he had the written farming contract with defendant for the purpose of complying with the educational requirements of the "G.I." bill. This contract is in evidence. He does not base his claim in this suit on that written contract but testified to an additional and separate oral contract with defendant to the effect that they had a machinery agreement (apparently taken care of by their stipulation in the trial court) and an agreement that they were to farm this particular farm on a partnership basis; were to provide whatever farm machinery each had; were to share the farm work on an exchange of labor basis as more fully referred to later; were to put the crops in together and harvest them together and were to divide the net proceeds and share the expenses.

In January, 1952, he settled with defendant for their 1951 farming operation and makes no claim concerning the time covered by that settlement. There apparently was a settlement satisfactory to plaintiff for 1952 for there is no testimony on plaintiff's behalf covering that year. In January, 1954, according to plaintiff, they settled for the year 1953 with the exception of certain wheat planted in August or September 1953, and certain split beans, soy beans and corn which were held back for later farm use.

As to the wheat planted in August or September 1953, there were 80 acres involved. Plaintiff estimated it made approximately 2,000 bushels, at the rate of 25 bushels to the acre, with a selling price of a

$1.75 a bushel. Thus, his claimed one-half interest therein amounted to $1,750.

As to soy beans, he stated there were 144 bushels reserved in a grain bin on the farm; that their market value was $3 a bushel, and that his one-half share was $216. There were 40 bushels of corn remaining in the corn crib. He testified that at the market price of $1.40 a bushel his half interest amounted to $28. There were 20 bushels of split beans left over from cleaning the seed bins. They were selling at $2.50 a bushel. He claimed $25 as his half interest.

Defendant's testimony was to the effect that he did have plaintiff operate the farm for him under a verbal contract in addition to the mentioned written contract which he agreed was merely for the purpose of aiding plaintiff to qualify for his G.I. schooling. The oral contract under which they operated covered the crop years 1952, 1953, and 1954. According to defendant, under its terms the farm was to be operated on a partnership basis, defendant "was to furnish my machinery against his (plaintiff's) labor. He was to do all the labor, I was to pay half the expenses. The farm machinery against his work, and we was to go fifty-fifty.

"Q. And at the end of the year you figured up the cost and expenses and divided fifty-fifty? A. That's right.

"Q. That's exactly the way you operated both years? A. We done that both years, yes sir.

"Q. He was to do all the labor on the farm; you were to do nothing? A. All of it, all the repair work and all, against my machinery.

"Q. Putting in crops and everything, was he to do that? A. Yes, sir, he was to do it all."

Defendant testified that contrary to this version of the oral agreement he, defendant, did perform a lot of the work and labor on the farm. Two of his neighbors testified they had seen him on occasion doing that work. In January, 1954, when they settled up for the preceding year's business defendant told plaintiff he owed plaintiff $362.12. He said, "Well, we figured up, I told him, 'What are we going to do about the work I've been doing? I've waited two years, now, for this labor, and I feel like you are able to do something about it' and, 'Well', he says, 'I think you deserve it, but I'—he didn't say he was going to pay it. 'Well' I says, 'I will tell you what I am going to do, I'm going to hold the machinery (and the) $362.12 till I do get a settlement.' " Defendant also testified that in 1952 he had told plaintiff, "Charles, I'm doing too much work here without getting some money out of it, when you are supposed to do it." "He says, 'I am willing to do it; I'd have to hire somebody if you didn't help me, and I'd rather for you to help me because you own the farm and know what you are doing.' So I went ahead." Defendant stated in explanation and support of his counterclaim that he was requesting reimbursement for two years of such labor averaging 120 days per year, or 10 days per month; that as a matter of fact he had actually worked twice that much. He described in some detail the work he had performed and testified the prevailing rate for this type of labor was $1.00 an hour but that he was asking only 75¢ an hour. He also testified as to other types of service he performed such as cribbing and hauling corn, wheat and beans and gave his estimate of the reasonable value of that service. He stated that the only reason he was not settling up with plaintiff was because plaintiff hadn't settled with him for this labor and service. He also testified that other than plaintiff's interest in the mentioned farm machinery and the $362.12, which he admittedly owed plaintiff, he had fully settled with plaintiff each year for all of the crops and owed him nothing further. He presented in evidence certain checks for various crops sold during the two crop years in question.

On June 8, 1956, the trial court found for plaintiff on his petition in the sum of $1,260.-22, and for plaintiff and against defendant on defendant's counterclaim. The resultant

judgment was for plaintiff for $1,260.22 with the clerk ordered to pay the costs of the case, $47.05, from the $596.20 combine sale proceeds, and pay to plaintiff defendant's interest therein as partial satisfaction of the judgment.

Defendant has appealed. His sole contention is that there is no substantial evidence on which the court, sitting as a jury, could find the issues for plaintiff on his claim and against defendant on defendant's counterclaim.

■ This court has jurisdiction of the appeal, because, as the record reveals, the amount in dispute is less than $7,500. Const. Mo.1945, Art. V, sec. 3 V.A.M.S.; Crow v. Missouri Implement Tractor Company, Mo. Sup., 292 S.W.2d 573.

■ This being a jury waived case, our duty on appeal is to review it upon both the law and the evidence as in suits of an equitable nature. The judgment is not to be set aside unless clearly erroneous, and due regard is to be given to the opportunity of the trial court to judge the credibility of the witnesses. Section 510.310 RSMo 1949, V.A.M.S.; Browder v. Milla, Mo.App., 296 S.W.2d 502, 505.

Plaintiff and defendant in their testimony agree that they were operating defendant's Boonville farm during the years in question under an oral partnership agreement whereby they were to share profits and expenses. It is also undisputed that defendant was owner of the farm and that it had no improvements of any type on it. Their dispute is twofold. Plaintiff contends and testified in substance that their agreement was that they were each to make his farming equipment available to the farming operation and were each to share in the work on the Boonville farm and plaintiff in return for defendant sharing the work on that farm was to aid defendant by sharing in the work on another nearby farm which defendant had rented from his wife. Stated differently, the essence of plaintiff's testimony on the disputed point was that he and defendant agreed to exchange labor with each other on these two farms for their mutual benefit. Plaintiff expressed it "He (defendant) farmed Mrs. Johnston's farm, and I helped him with work on it the same as he worked with me on his farm." However, defendant contends and testified that their oral agreement was that plaintiff was to perform all of the work on the Boonville farm. His counterclaim is based on his contention that he is entitled to the reasonable value of work he performed on the Boonville farm, sometimes at plaintiff's request, which work plaintiff should have performed.

■ Stripped to its essentials, the resultant issue presented by the evidence on the counterclaim turns on the credibility of plaintiff's word as to the terms of the oral agreement against defendant's word as to the terms of the oral agreement. The burden of proof as to the counterclaim rested on defendant. The trial judge who had the opportunity of observing them firsthand as they testified found for plaintiff on this issue and ruled against defendant on his counterclaim. It is our view that the situation presented to us is one where, in accordance with the general rule in such situations, we should recognize the trial judge's better opportunity to pass on the question of credibility, and accept and adopt his findings thereon. Accordingly, we find against the defendant on his counterclaim.

■■ As to plaintiff's claim on his petition, plaintiff had the burden of proof. Plaintiff testified that in late August or early September, 1953, he planted 80 acres of wheat on the Boonville farm which was not settled for in their January, 1954 accounting. Plaintiff left the farm shortly after the 1954 settlement and moved to another state. Defendant testified generally that he had settled with plaintiff in full for everything except the mentioned co-owned farm machinery and $362.12, 1953 farm expenses owed plaintiff. Defendant did not

**144**

specifically testify he had paid plaintiff for his half interest in this 80 acres of wheat. It is common knowledge that wheat planted in late August or September is not ready to harvest prior to the following June. It would appear that defendant in the January, 1954, settlement which, so far as the record shows, was the last one they made, could not have included the 80 acres of wheat which would not mature before the following June. According to plaintiff's testimony his half interest in this wheat was $1,750.

The total of plaintiff's half interest in the other crops which plaintiff testified was not included in any of their settlements was $269. Additionally, it was stipulated that defendant owed plaintiff $362.12 farm expense money.

■ On the basis of the testimony concerning the August or September, 1953, planted wheat alone the evidence supported plaintiff's judgment of $1,260.22, and more.

Defendant observes the judgment of the trial court is not precisely in accord with the claim of plaintiff and does not reveal just how the trial court determined it. However, as stated in Baker v. Brown's Estate, 365 Mo. 1159, 294 S.W.2d 22, 27: "A verdict (or judgment) may be responsive to the issue of damages although it does not find an amount precisely in accordance with the claim of either of the parties." (Citing numerous cases.)

Plaintiff has not appealed. On such a record as is before us we cannot hold that the trial court erred against defendant, or that the judgment is clearly erroneous as to defendant. On the contrary, we find that the evidence supports the judgment of the trial court.

The judgment is affirmed. It is so ordered.

All concur.