Fred W. WHITE and Clarita V. White, Respondents,

v.

SUPERIOR TRAILER SALES, INC., Appellant.

No. WD 30985.

Missouri Court of Appeals, Western District.

Sept. 2, 1980.

Gregory O. Grounds, Kansas City, for appellant; Jones, McDaniel & Frankum, Kansas City, of counsel.

Michael C. McCormick, Lee's Summit, for respondents.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

PRITCHARD, Judge.

This action was begun as one sounding in fraud, as in essence pleaded, that representations were made that certain repairs upon a used truck purchased by respondents had been made, which representations were either known to be false or were made recklessly without knowledge of their truth or falsity. Actual and punitive damages were prayed, but the trial court, sitting without a jury, allowed only $2,100.00 actual damages, and made no specific finding of fraud, but found that during initial negotiations an assurance existed that the vehicle was to provide respondents a reasonable service, and they were led to believe that the initial problems with the truck would be resolved prior to the sale. The trial court further found that both parties were ignorant of the truck's serious mechanical problems but that the subsequent "ring job" repairs by respondents would not have been necessary had the vehicle been repaired originally in accordance with appellant's assurances. The parties, however, have joined issue here upon the fraud aspects of the case, and disposition depends upon whether that theory supports the trial court's judgment.

Respondents operated a small trucking firm and desired to purchase a used truck in good condition for use in their business. Respondents learned that appellant had a truck for sale, and they contacted Mr. John Brook, its president, about it early in October, 1976. Mr. Brook asked Mr. White to check over the truck which he did for 20 to 30 minutes, and after a test drive, he told Mr. Brook that something was wrong with the engine and he wanted it checked. Mr. Brook agreed to send the truck to Cummins Mid–America, a shop recommended by Mr. White. Mr. Brook left the vehicle at Cummins Mid–America on October 22nd, requesting a diagnosis of the condition of the diesel engine. A work report indicated that Mr. Brook had requested a dyno or mechanical check and a check for blowby, which is a compression problem. Mr. Brook testified that he was informed by the Cummins shop by telephone that the engine needed $400 to $600 in repairs, but that the truck, for its age, was in pretty good shape. He never saw the written "dyno" (which simulates load and road conditions) or mechanical report prepared by mechanics at the Cummins shop, but it was later found in the truck by Mr. White. The "dyno" report showed that the engine had "Oil leaks at oil cooler housing above oil filter. Right bank pumping oil out. Broken manifold running down on tractor frame." Danny Billups, the Cummins shop general service manager, testified that the oil leaks could have been caused by a number of factors, but generally they are related to ring problems and usually require expensive repair work. Blowby, which is an escape of compression slipping past the rings and pistons into the crankcase, existed as evidenced by the oil coming out of the right bank. Excessive oil consumption could be expected as well as an eventual engine blow–up due to a gradual pressure buildup.

Appellant brought the truck in again to the Cummins shop with directions to adjust the valves and injectors, calibrate the fuel pump and repair the oil leaks that had been found on the dyno report on the first engine test. There was no request for work that had anything to do with performing any kind of a ring job (to correct blowby). The repair report had on its statements that the engine was operating satisfactorily and the problems were corrected, but Billups testified that the statements related only to the work done at the customer's request and did not extend to the whole engine.

When the truck was returned to appellant, Mr. Brook told respondents that the repair work was completed. They met on October 29th to close the deal at which time Mr. White asked to see the bill on the repairs, but Mr. Brook never supplied him with any evidence in writing as to what had been done. He said that over $600 had been spent on the truck and "we just checked it out and fixed it up. It's ready to go." Both respondents testified that Mr. Brook had told them that the truck would be in tiptop shape, that "You shouldn't have any problem with it because the thing is in great shape", and that he had it fixed and it should be running fine, and if there were any problems to let him know and he would take care of them. Mr. White testified that he did not test drive the truck at the time of sale assuming that everything was all right with it, but Mr. Brook testified that he did test drive it immediately before signing the papers.

Mr. Brook denied describing the vehicle's condition as A–1 or tiptop; he informed respondents that it was a used 1972 truck and that they should look it over; the information he gave them about its condition was solely from telephone conversations with the Cummins company; and the contract and delivery paper had a "purchased as is" clause, which was regularly included because appellant did not warrant used equipment.

On November 9, 1976, the first time the truck was pulling a loaded trailer, it lost oil pressure, and it was taken back to Cummins Mid–America for a "Check for excessive blowby and low oil pressure." Cummins made these repairs: New liners and pistons, new rod and main bearings, a "ring job" at a total repair bill of $2,100.

The conflicts in the testimony were for the trial court to determine. *Snadon v. Gayer*, 566 S.W.2d 483, 491[6, 7] (Mo.App. 1978), which case holds also that the judgment under review is presumed to be correct and the burden of proving that it is erroneous rests upon appellant.

Appellant contends that there was no competent evidence that it knew that the representation alleged was false or that it recklessly made the alleged statements without knowledge of their truth or falsity. Of course, there is no evidence that Mr. Brook actually knew that the truck had not been repaired to correct the blowby condition, so the inquiry focuses upon whether the statement made by him that the truck had been fixed and was ready to go was made recklessly without knowledge of its truth or falsity.

It was said in *Ackmann v. Keeney–Toelle Real Estate Company*, 401 S.W.2d 483, 489[6, 7] (Mo. banc 1966), quoting from *Wilson v. Murch*, 354 S.W.2d 332, 338 (Mo. App.1962), " 'To recover for fraudulent representations, it is not necessary that it be shown that defendant had actual knowledge of the falsity of the facts stated by him. It is sufficient that he made the representations with the consciousness that he was without knowledge as to their truth or falsity, when, in fact, they were false.' " See also *Salmon v. Brookshire*, 301 S.W.2d 48, 53[4] (Mo.App.1957). In this case appellant directed Cummins Mid–America to make certain repairs to the truck which did not include measures to correct the blowby problem, when it had, or could have had, the written "dyno" report which would have called to its attention the fact that those repairs should have been made to make the truck operable for respondents' purposes. The evidence is certainly convincing that Mr. Brook represented not only that the truck would be repaired to good condition, but at the time of sale "You shouldn't have any problem with it because the thing is in great shape." These facts are sufficient to establish that a representation was consciously and recklessly made as positive assertions without knowledge of the truth that major defects in the truck engine existed at the time of sale.

The judgment is affirmed.

All concur.