D. C. COTNER and D. C. Cotner, Inc., a corporation, Plaintiffs-Respondents,

v.

Charles BLINNE and Rolla Equipment Company, Defendants-Appellants.

No. 11535.

Missouri Court of Appeals,
Southern District,
Division Three.

Oct. 22, 1981.

Ronald J. Fuller, Rolla, for defendants-appellants.

Gene Gulinson, Curtis W. Carle, Salem, for plaintiffs-respondents.

HOGAN, Judge.

In this action based on fraudulent misrepresentation in the sale of an International Harvester fifth-wheel, over-the-road tractor, the corporate plaintiff has had a verdict and judgment against the defendants in the amount of $8,000 and the jury has awarded the same plaintiff $10,000 as punitive damages, assessed severally against defendants in the amount of $5,000.[1]

Admitting the point is not preserved for review, defendant asserts the plaintiff failed to make a submissible case and requests review as a matter of plain error. Defendant's point is arguable, *Millar v. Berg*, 316 S.W.2d 499, 502–503[3] (Mo.1958), but we doubt that, under the present rules, the point is specific enough to point out the particular error asserted. Nevertheless, we find it both equitable and expedient to consider the merits of the appeal in terms of the elements of actionable fraud. The evidence is in spirited conflict, but this court must take the evidence most favorably to the plaintiff's case, disregarding defendant's evidence except as it aids plaintiff's case, bearing in mind that a jury is entitled to believe all of the testimony of any witness or none of it, or accept it in part and reject it in part, just as the jury finds it to be true or false when considered in relation to the other testimony and the facts and circumstances in the case. *Millar v. Berg, supra*, 316 S.W.2d at 503.

■ The elements of actionable fraud are: (1) A representation; (2) Its falsity; (3) Its materiality; (4) The speaker's knowledge of its falsity or ignorance of its truth; (5) His intent that it should be acted on by the person and in the manner reasonably contemplated; (6) The hearer's ignorance of its falsity; (7) His reliance on its truth; (8) His right to rely thereon; (9) His proximate and consequent injury. *Powers v. Shore*,

---

1. The corporate parties are family corporations; for narrative purposes we shall regard and refer to Mr. Cotner and D. C. Cotner, Inc., as plaintiff and to Mr. Blinne and Rolla Equipment Co. as defendant, except where the context requires distinction.

248 S.W.2d 1, 5[2] (Mo. banc 1952); *Johnson v. Allen*, 448 S.W.2d 265, 267[1] (Mo.App. 1969).

Was there a representation? Plaintiff testified that at the time he purchased the tractor, he wanted "[j]ust a nice good truck." The model "[d]idn't make too much difference as long as it was up in the late models, '75, '76, '77." Plaintiff shopped in Springfield, but he was attracted by "a lighted billboard" "[r]ight along the edge of the road by the Rolla Equipment property." The sign advertised a 1976 Transtar II for $29,500.

Mr. Cotner later called upon Mr. Blinne and "asked him if he had some pretty good road tractors and he said I have several out there, he said 'I have three good ones, three 1976's.'"

When the sale was made, all the documents prepared by the defendant corporation to effect the sale showed that the tractor plaintiff purchased was a 1976 model. These documents included a certificate of inspection as required by § 307.350.1, RSMo 1978; an application for a Missouri title and license as required by § 301.190, RSMo 1978, and a retail installment contract suitable for use in purchasing motor vehicles. All these documents show the tractor to be a 1976 model. Further, upon pretrial deposition defendant Blinne was asked the following question about the vehicle he sold to plaintiff: "Q. It was sold to him as a 1976 model wasn't it? A. Yes."

Disregarding defendant's evidence to the contrary, there was manifestly a representation of a presently existing fact: The Transtar II road tractor was a 1976 model.

Was the representation false? If it be conceded there was a representation, this element is scarcely in issue. The Manufacturer's Statement of Origin, a retained copy of a retail installment contract executed by the previous owner and the records of the Department of Revenue all show the tractor was a 1975 International Harvester tractor. Called as a witness by the plaintiff, Mr. Blinne admitted that he had taken the vehicle in trade in March 1977, and had prepared, or had had his office employees prepare, a retail sales contract showing the vehicle to be a 1975 model. There is substantial evidence that the representation was false.

Was the representation material? There is substantial evidence that it was. Plaintiff testified that he had "check[ed] with other garages" before he purchased the tractor in question; that he had attended truck sales; that he regularly received literature concerning truck prices; that he had purchased some 20 tractors and had sold 19 of them, and that he had been in the trucking business for about 25 years. Plaintiff was permitted to testify to the difference in value between a 1975 model Transtar II tractor and 1976 model. Plaintiff paid $29,000 for the tractor he purchased; his opinion was that the value of a 1975 model was about $8,000 less than the value of a 1976 model.

Plaintiff also had the testimony of Bill Shelton, whose business was leasing fifth-wheel tractors to common carriers. This witness had been in the trucking business since 1943. For some time, this witness had been employed as a purchasing agent for Wright Motor Lines, a Colorado trucking firm. He had bought about 100 tractors for the Wright enterprise, and about 20 for his own use. He was familiar with tractors manufactured by Kennworth, Peterbilt, Freightliner and International Harvester. He was familiar with the 1975 model International Harvester Transtar II, and received regular trade publications, including one "that most of the truckers go by in pricing trucks."

Mr. Shelton testified that the model year was one of the factors which determine the value of a used tractor. He further explained that road tractors depreciate quickly in the first 2 years of use. In his experience, a $50,000 tractor would depreciate about $12,000 in the first year, $10,000 in the second year and about $7,500 in the third year. Upon cross-examination, Mr. Shelton testified that a 1976 model tractor would have a value "somewhere around seven to eight thousand dollars" more than a 1975 model in the same condition.

The evidence just recited is sufficient to show the representation was material; it is also sufficient to show that plaintiff's direct damage—applying the "benefit of the bargain" rule—was $8,000. We may also dispose of defendant's briefed points I, II and III. The substance of those points is that neither plaintiff nor Shelton was qualified to testify, and that Shelton based his testimony on dissimilar experiences. Plaintiff was an owner with experience, and Mr. Shelton qualified as an expert. Ordinarily an owner, familiar with the type of personalty invoived, may testify to the value of items with which he or she is familiar. *Casada v. Hamby Excavating Co., Inc.,* 575 S.W.2d 851, 856[5] (Mo.App.1978). Further, Mr. Shelton testified as an expert; it is unnecessary that an expert have a complete knowledge of every facet of the subject of inquiry—here, the characteristics and values of used tractors. 3 J. Weinstein and M. Berger, Weinstein's Evidence § 702[04], pp. 702–28—702–29 (1981). And, a witness who testifies as an expert may have acquired some of his knowledge by study and inquiry. See *State v. Bloomfield Tractor Sales, Inc.,* 381 S.W.2d 20, 24 (Mo.App.1964).

Does the record support an inference that Mr. Blinne knew of the falsity of his representation? We bear in mind that recovery may be had for false representations recklessly made without knowledge of their truth or falsity, *Ackmann v. Keeney-Toelle Real Estate Company,* 401 S.W.2d 483, 489[6, 7] (Mo. banc 1966); *White v. Superior Trailer Sales, Inc.,* 604 S.W.2d 812, 814[2] (Mo.App.1980), but plaintiff's case was submitted by way of MAI 23.05 upon the hypothesis that defendant *knew* his representation to be false. Plaintiff's burden of proof was not greater than in other cases tried to a jury. *Crawford v. Smith,* 470 S.W.2d 529, 531–532[1] (Mo. banc 1971).

For several reasons, we believe a jury could have found defendant Blinne *knew* his representation to be false. There was evidence indicating the tractor in question was not a readily salable item. Defendant Rolla Equipment Company received the tractor in September 1975 and it was not sold for 6 months. Further, the record clearly shows that on March 25, 1977, Mr. Blinne accepted the tractor in question as a trade-in. The former owner of the tractor purchased another, and the trade-in was listed as a 1975; the model year and chassis number are clearly stated. Mr. Blinne readily admitted he signed the contract— plaintiff's exhibit 8—and that he had a copy of that contract in his file. This transaction took place about 4 months before Mr. Blinne sold the tractor to the plaintiff.

Defendant waved aside this recent dealing with the tractor by saying he sold many tractors in the course of a year, but a jury might have found that Mr. Blinne's memory was very selective. In his testimony on other issues, Mr. Blinne had a vivid recollection of the special "options" with which the tractor was equipped; he was able to recall the interior appointments of the cab in great detail. It should be understood that we are not expressing our view; we only say that a rational trier of fact might very well have concluded Mr. Blinne remembered the particular tractor, and its make and model, very well. There was other evidence from Mr. Cotner's former attorney which tends to support this conclusion, but it need not be recounted at length. There was a substantial basis for a finding that Mr. Blinne knew the tractor was a 1975 model.

Did the defendant intend that his representation be acted upon by Mr. Cotner, and in the manner contemplated? No extended discussion of this point is required. In order to prove actionable fraud, it is necessary to establish that plaintiff is within that class of persons whom defendant expects or has reason to act or refrain from action in reliance upon the misrepresentation. Restatement (Second) of Torts § 531 (1977). The requirement has been said to have originated with *Peek v. Gurney,* L.R. 6 E. & I.App. 377 (1873) and has been fully explained by Dean Prosser, among others. See W. Prosser, Torts § 107, pp. 702–704 (4th ed. 1971). In this case we are dealing with a seller's own advertisement of specific goods to a possible consumer and with his

direct representation of a material fact to an interested putative purchaser. A jury could manifestly have found that Mr. Cotner was within that class of persons defendant expected to act in reliance upon his representation.

The final three elements may conveniently be considered together by inquiring whether the record supports an inference that Mr. Cotner did not know the representation was false; relied upon its truth and had a right to rely on the representation that the tractor was a 1976 model.

This consideration may not be lightly brushed aside. Counsel was at some pains to establish plaintiff's knowledge of trucks and the trucking industry and of course, the question arises whether, in light of his experience, he could reasonably claim to be unaware of the characteristics of various models of tractors and further, whether he had a right to rely on Mr. Blinne's representation.

■ Generally, a person to whom representations are made is entitled to rely on them when he lacks equal facilities for learning the truth; where the facts are peculiarly within the knowledge of the speaker and are difficult for the hearer to ascertain; where the misrepresentations relate to latent defects; where, because of the hearer's ignorance and inexperience, it would be necessary to employ a third person to make an examination in order to learn the truth; and, where the employment of an expert would be required. *Shechter v. Brewer*, 344 S.W.2d 784, 788[2] (Mo.App. 1961).

Enlarged photographs of a 1975 model International Harvester Transtar II and a 1976 model of the same tractor were introduced in evidence by the defendant. The tractors are virtually indistinguishable. Plaintiff testified that he looked at the tractor before he bought it, but made no examination of the engine. Plaintiff insisted that he had no knowledge of the particular tractor he purchased, even though it had belonged to a friend and former employee. Further, the evidence indicates that this particular fifth-wheel tractor is produced in many different versions. Some tractors are powered by a Cummins engine, other models incorporate a "Detroit" engine, and still others are manufactured with a Caterpillar motor. Some International Harvester tractors have specially appointed cabs, and at least two different transmissions are available. It would be almost impossible to ascertain the model year of any tractor without obtaining the chassis identification number to check against the identification numbers produced in a particular year unless a prospective purchaser had the manufacturer's statement of origin or some other document indicating the model year. The defendant may not have had such documentary evidence at hand, but it was certainly more readily available to him than to the plaintiff. In short, a jury could have inferred that plaintiff lacked equal facilities for learning the truth, and that the facts concerning the model year were peculiarly within Mr. Blinne's knowledge and were difficult for the plaintiff to ascertain. We conclude a fair question of fact existed as to elements six, seven and eight of plaintiff's case.

■ Did the plaintiff show consequent injury and damage? Plaintiff, whose qualifications we have discussed, testified that the 1-year difference in model lessened the value of the tractor by approximately $8,000. Mr. Shelton, whose qualifications we have also discussed, said the difference in value was between $6,000 to $8,000. The general rule is that a person acquiring property by virtue of a commercial transaction, who has been defrauded by false representations as to the value, quality, or condition of the property may recover the "benefit of the bargain," that is, the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representation had been true. *Dolan v. Rabenberg*, 360 Mo. 858, 867–868, 231 S.W.2d 150, 155–156 (1950); *Lindberg Cadillac Company v. Aron*, 371 S.W.2d 651, 653[2] (Mo.App.1963). Defendant's point that the actual damages awarded were excessive may be disposed of by noting that if an

award of damages is within the range of the evidence, the jury's verdict may be responsive to the issue of damages even though it does not find an amount precisely in accordance with the claim of either of the parties. *Baker v. Brown's Estate*, 365 Mo. 1159, 1165, 294 S.W.2d 22, 27[14] (1956); *Miller v. Johnston*, 324 S.W.2d 140, 144[7, 8] (Mo.App.1959). Our conclusion that plaintiff made a submissible case also disposes of defendant's contention that plaintiff's verdict-directing instruction was without evidentiary support.

Defendant's points IV, V and VI are complaints that the trial court erred in excluding evidence which tended to show that defendant Blinne had made an "honest mistake." Counsel asserts that in any case where punitive damages are sought, one of the defenses available to the defendant is the defense of "honest mistake" or "honest belief." Such statements may indeed be found in the precedents, *Young v. Mercantile Trust Co. Nat. Ass'n.*, 552 S.W.2d 247, 251 (Mo.App.1977), but we are not convinced there was prejudicial error here. Certainly the record does not support defendant's assertion that "a studied effort was made to deny Defendants any opportunity to offer evidence from which a jury could find any mitigating circumstances or that Defendant Blinne acted in 'good faith.'"

Defendant's points are directed to his cross-examination of two witnesses, plaintiff and plaintiff's former attorney. It appears that after plaintiff was notified by the Department of Revenue that the tractor was a 1975 model, he advised defendant Blinne "this truck we bought for a 1976 the State of Missouri called us back and told us we didn't have a '76 we had a '75 model." According to plaintiff, defendant Blinne, at this point, "wouldn't talk to us about [getting the transaction straightened] out." Plaintiff decided to employ an attorney and did so.

Some time afterward, defendant and a representative of the finance company called upon the plaintiff and his wife at their home. Plaintiff or his wife told Blinne and the finance company representative that they had "turned the matter over" to an attorney. Thereupon, counsel was permitted to examine plaintiff at length as to whether or not plaintiff had said, in the presence of defendant Blinne and the finance company representative, that plaintiff knew defendant had made an "honest mistake." Plaintiff denied having said anything of the sort but finally admitted he could not remember. So, it could not be said that defendant's counsel was denied an opportunity to inquire into this aspect of "honest mistake."

Defendant further complains that his right to cross-examine the plaintiff was unduly limited because the trial court sustained an objection to the following question: "Well, he offered to bring—to give the truck back [to you] and put you back where you were, didn't he?"

During cross-examination, plaintiff testified that when he advised defendant Blinne the tractor was a 1975 model, defendant exhibited a 1976 title to the truck and said "we'll straighten it out." Counsel then put the question we have set out; plaintiff's attorney objected strenuously, and the trial court sustained the objection. Defendant now asserts that the trial court's refusal to allow plaintiff to answer deprived him of his defense of "honest mistake."

 The controlling principle is that if, in a specific instance the evidence should not have been excluded, the error is harmless if the same evidence is found in the testimony of the same or other witnesses, given before or after the objection was sustained. *Boring v. Kansas City Life Insurance Company*, 274 S.W.2d 233, 239 (Mo. 1955); *Steffen v. Southwestern Bell Telephone Co.*, 331 Mo. 574, 583, 56 S.W.2d 47, 48[2] (1932). Immediately after the court sustained the objection, counsel for defendant pursued the same subject as follows: "Q. On this date when you say you went . . . and talked with Mr. Blinne, what did you say to him? A. Well, I told him that this truck we bought for a 1976 the State of Missouri called us back and told us we didn't have a '76 we had a '75 model. Q.

All right. What did he say. [sic] A. He said, 'No problem,' he says—he showed us the old title and he said, 'No problem, we will get this all straightened out.'"

Counsel continued to pursue the matter, in this manner: "Q. All right. He said, 'We'll take care of you.' Right? A. He wouldn't talk to us about straightening it out. Q. Didn't what? I didn't understand your last—A.—He didn't talk to us anything about getting it straightened out or take care of us.... Q. All right. Did you suggest to him any ways to straighten it out or was there any conversation at all? A. No. Q. None at all? A. No."

Manifestly, the particulars of the encounter were put before the jury by testimony given by the plaintiff after the objection was sustained. The point is wholly without merit.

Defendant's point VI is that the trial court unduly limited defendant's cross-examination of plaintiff's former attorney, who was called as a rebuttal witness. This point is directed to the trial court's exclusion of an offer of rescission made by defendant several weeks after plaintiff discovered the tractor was a 1975 model. A rejected offer to rescind a sale for fraud does not preclude a recovery of damages for fraud. *Fleischer v. Berger, Cohn & Co.*, 96 S.W.2d 643, 647[8] (Mo.App.1936). It is the plaintiff, not the defendant, who has the election to rescind or sue in tort, and if plaintiff agrees to rescind, the tort-feasor must tender a return of all benefits to avoid the fraud. *Timmons v. Bender*, 601 S.W.2d 688, 690[3][5] (Mo.App.1980). There is no evidence that defendant made any offer of restitution, and to repeat, his offer of rescission could have been rejected without prejudice to plaintiff's right to sue for fraud. There was no error in excluding evidence of an offer to rescind made after the sale was complete.

Defendant's argument that Instruction No. 6, MAI 23.05, was not supported by the evidence has been disposed of by our discussion of the evidence. We reiterate that we believe a jury could have found the defendant *knew* the tractor was a 1975 model at the time he represented it as a 1976 model.

Defendant's final point is that there was no evidence to support the award of actual damages. We have discussed and rejected this point.

We find no error materially affecting the merits of the action. Accordingly, the judgment is in all respects affirmed.

MAUS, C. J., and PREWITT, J., concur.