**John H. KOCH, Sr.,**
**Plaintiff-Respondent,**

**v.**

**VICTORIA LOAN COMPANY,**
**Defendant-Appellant.**

**No. 44222.**

Missouri Court of Appeals,
Eastern District,
Division One.

April 19, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 26, 1983.

Application to Transfer Denied
June 30, 1983.

Kent E. Karohl, Kirkwood, for defendant-appellant.

W. Dudley McCarter, Clayton, for plaintiff-respondent.

STEPHAN, Judge.

Defendant Victoria Loan Company appeals from a judgment against it based on a claim of misrepresentation in which a jury awarded plaintiff John H. Koch, Sr., $19,100.00 in actual damages and $10,000.00 in punitive damages. We affirm.

In 1976, plaintiff became interested, after seeing a newspaper advertisement, in purchasing an apartment complex called the Morganford Plaza Apartments. The property was owned by Victoria Loan Company and Donald and Alice Burst, who had listed the property for sale with the real estate department of the Bank of St. Louis. As a result of reading that listing, plaintiff contacted a real estate agent, Weldon Zoellner, to represent him in the negotiations to acquire the property. The plaintiff received from the Bank of St. Louis, through Mr. Zoellner, a sale brochure which stated the property's income, contained a picture of the property, and stated that the roofs were installed in 1975. During the negotiations, defendant Victoria Loan's president and agent, Arthur Barton, confirmed this statement about the roofs, and, additionally, told plaintiff that he would have no problems with the roofs. Plaintiff and Zoellner visited the apartments on two occasions. During both meetings, Barton stated that the roofs were installed in 1975, that the roofs were new, that there were no leaks, and that the roofs were sound. Barton further stated that the roof was guaranteed for ten years, and when Zoellner asked Barton about the water stains he saw on the apartment walls, Barton stated that the new roof had alleviated the problem and that there would be no more leaks. Plaintiff's son, John Koch, Jr., testified that when he and his father met with Barton during sale negotiations, Barton reiterated that there would be no roof problems, and that the roofs were installed in 1975 and an extensive workmanship and materials guarantee accompanied them. After Koch, Jr., noticed water stains on ceilings and walls, Barton reassured him that this occurred prior to the installation of the new roof and that there had been no leaking problems since its installation.

On April 23, 1976, plaintiff purchased Morganford Plaza Apartments for $350,000, based on the appraisal by Zoellner. Subsequent to the closing, Koch, Jr., noticed a leak in apartment 3733E after being alerted to it by a letter from the tenant of that apartment. The letter had been sent to the apartment manager, prior to the sale of the property. Plaintiff had no notice before the sale of any roof problems in apartment 3733E. The president of a roofing company, Quality Contractors, testified that his company completely reroofed three of the apartment buildings by April 1974 and that work on the other two buildings in the complex was completed before his company began work in January 1974. The president of Quality Contractors had been made aware prior to the sale date of the property that there was a leak problem in apartment 3733E.

At trial, plaintiff presented testimony from a roofing contractor and a consulting engineer. Their combined statements amounted to a decided determination by them that the roofs were not installed in accordance with accepted roofing practices. In their view, poor materials were used and the installation was not completed in a workmanlike manner. As a result of these defects, the roofs were not waterproof. From an investigation by the consulting engineer, there was evidence that there was extensive, long-time leakage in the apart-

ments' roofs, present certainly at least prior to April 1976. Mr. Zoellner testified that his original recommendation to plaintiff to purchase the property for $350,000 would have been decreased to between $330,000 and $335,000, in light of the actual condition of the roofs.

In a comprehensive point on appeal, defendant maintains error resulted from the trial court's denial of defendant's motion for judgment at the close of plaintiff's case and all the evidence, because plaintiff failed to establish several elements necessary to recover under a misrepresentation theory. In such an action, a plaintiff must establish the following elements of fraud in order to recover: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity of the representation or his ignorance of its truth; (5) the speaker's intent that his statement should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the statement; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximately caused injury. *Osterberger v. Hites Construction Company,* 599 S.W.2d 221, 227 (Mo.App.1980). Although a plaintiff's burden of making a submissible case in fraud is a heavy one, *Weaver v. Travers,* 631 S.W.2d 81, 83 (Mo. App.1982), we find that plaintiff here sustained this burden. In arriving at this determination, we have proceeded from the familiar principle that "we must view the evidence in the light most favorable to the plaintiff and give [him] the benefit of every inference reasonably deducible from such evidence and we must disregard the defendants' evidence except insofar as it might tend to aid the plaintiff's case." Although fraud may "never be presumed," it "is seldom susceptible of proof by direct evidence, [and] must almost invariably be shown by circumstances surrounding the transaction ..." *Yeager v. Wittels,* 517 S.W.2d 457, 463 (Mo.App.1974).

Although defendant challenges the sufficiency of the evidence on all of the elements except the materiality of the representation, only four of the elements require discussion because of their interrelationship to the others as presented in this case. With regard to the fourth element enumerated above, defendant contends that it should be relieved of liability because its agent, Arthur Barton, did not have knowledge of the condition of the roof; and, additionally, that he lacked the necessary expertise to so discover construction defects.

Recovery under a fraudulent misrepresentation theory is not conditioned upon the speaker's having actual knowledge of the falsity of his statements. It is enough that Barton " 'was without knowledge as to their truth or falsity, when, in fact, they were false.' " *White v. Superior Trailer Sales, Inc.,* 604 S.W.2d 812, 814 (Mo.App. 1980).

The defendant further maintains that the evidence failed to establish an intent that Barton's statements be acted upon. Because the sale contract contained a provision stating "[T]his is the entire contract and neither party shall be bound by representation as to value or otherwise unless set forth in contract," defendant argues that this contract represented the whole agreement, thereby negating any representations not written therein. We do not agree.

The trial court, in a memorandum opinion supporting its order denying a new trial, correctly recognized that the rule in Missouri stating that all prior and contemporaneous representations merge in the written contract " 'does not apply to fraudulent representations made for the purpose of inducing a party to enter into such contract.' " *Beshears v. S-H-S Motor Sales Corporation,* 433 S.W.2d 66, 71 (Mo.App. 1968). See also *Burns v. Vesto Company,* 295 S.W.2d 576, 579 (Mo.App.1956). Barton's statements were made in the midst of negotiations for the sale of Morganford Plaza Apartments and in response to concerned questions by a prospective purchaser about leaks in the roofs. Testimony concerning these representations was properly admitted and constituted sufficient evidence for the jury to find that Barton in-

tended that his statements be acted upon by plaintiff in consummating the purchase.

Defendant also contends that plaintiff had no right to rely on the representations because plaintiff's son inspected the roofs and plaintiff accepted the property "as is" after removing the contingency clause from the contract. Plaintiff's son's inspection of the roofs was followed, however, by reassurances from Barton that plaintiff "wouldn't have any problems inherent with the roofs when [he] bought that building." Mr. Koch had a right to rely on Mr. Barton's representations because the facts were peculiarly within defendant's knowledge or, at least, readily accessible to Barton. Moreover, as stated in *Shechter v. Brewer,* 344 S.W.2d 784, 788 (Mo.App.1961):

> A person to whom representations are made is entitled to rely on them when he lacks equal facilities for learning the truth; where the facts are peculiarly within the knowledge of the speaker and are difficult for the hearer to ascertain; where the misrepresentations relate to latent defects; where, because of the hearer's ignorance and inexperience, it would be necessary to employ a third person to make an examination in order to learn the truth; and, where the employment of an expert would be required.

As in *Shechter,* the plaintiff here was unaware of the true condition of the roofs and lacked the experience necessary to attain such knowledge without hiring his own consultants. In any event, the jury was empowered to weigh the facts as to whether Koch had a right to rely on the representations made to him. *Throckmorton v. M.F.A. Central Cooperative,* 462 S.W.2d 138, 140 (Mo.App.1970).

The defendant disputes that plaintiff incurred any damages, arguing that when plaintiff transferred his interest in the property to a partnership composed of himself and his two sons several days after plaintiff acquired the property, there was no evidence that he received less than he agreed to pay defendant.

Although a resale by a defrauded purchaser close to the date of his purchase may be a relevant indication of the property's market value on the closing date, the mere record of such a figure may not even be helpful in determining fair market value, much less conclusive on the point. *DeBow v. Higgins,* 425 S.W.2d 135, 141 (Mo.1968). Plaintiff's valuation of his property after transferring the property to the partnership just a few days after plaintiff purchased it does not necessarily reflect reliable values, given the partnership's ignorance of the defects in the buildings.

In any event, Mr. Zoellner, a qualified expert testified as to his opinion that the property was actually worth $330,000 to $335,000 at the time of the sale, taking into consideration the leaking roof. Such testimony certainly evidences the proper measure of damages: " 'the difference between the value of the property as represented and the actual value of the property at the time of sale.' " *DeBow,* supra, at 140. From the evidence presented, we find that plaintiff successfully established the element of damages necessary in a fraud case, as well as the remaining elements previously addressed.

The defendant also claims error in the court's submitting plaintiff's verdict directing instruction number 5. The instruction directed the jury to find for plaintiff if they believed six elements for a claim of misrepresentation were present.[1] The de-

1. Instruction No. 5 is as follows:

Your verdict must be for Plaintiff John H. Koch, Sr. and against Defendant Victoria Loan Company if you believe:

First, Defendant represented to Plaintiff that Morganford Plaza Apartments was reroofed in 1975 in a good workmanlike manner and with good material intending that Plaintiff rely upon such representations in purchasing Morganford Plaza Apartments, and

Second, the representations were false, and

Third, Defendant did not know whether the representations were true or false, and

Fourth, the representations were material to the purchase by plaintiff of Morganford Plaza Apartments, and

Fifth, Plaintiff relied on the representations in making the purchase, and in so relying Plaintiff was using ordinary care, and

fendant lodges a particular complaint about two paragraphs of the instruction, namely that plaintiff used ordinary care in relying on defendant's representations in purchasing the apartments and that Barton made representations that the apartments were reroofed in 1975 in a good, workmanlike manner and with good material. The defendant reiterates a claim which he raised in his first point, to the effect that such propositions are not supported by the evidence. We have put this contention to rest and do not dwell on the point now. In determining the propriety of the submission of any instruction, we view the evidence in the light most favorable to the prevailing party and do not disturb the action of the trial court where there is evidentiary support for the instruction. *Ramsey v. Vance,* 622 S.W.2d 774, 777 (Mo.App.1981). There was testimony that when plaintiff's son and plaintiff's real estate agent inspected the roofs and discovered water stains, Barton assured them that the leaks occurred prior to the installation of the new roofs. Furthermore, there was evidence that Barton made direct representations as to the quality of materials used for the roof and, inferentially, by assuring plaintiff that the new roofs were in good condition and that he would have no problems with them. Such evidence was sufficient to support submission of the instruction.

In another point involving an instruction, defendant contends that the court erred in submitting instruction number 7. This instruction directed the jury, if it found for plaintiff, to determine the sum that it believed represented the difference between the actual value of the apartments and the value, had the apartments existed as represented by defendant. Upon reaching this sum, the jury was instructed to "deduct nine hundred dollars which Donald and Alice Burst and Bank of St. Louis have paid Plaintiff." If this amount was greater than plaintiff's damage, the verdict was to be for defendant. The defendant discusses in his brief two specific grounds as to why this instruction was erroneously submitted. We subscribe to neither.

The basis for defendant's first ground, in effect, is a complaint that the court permitted plaintiff after trial to amend Count II of his petition as to damages. Specifically, defendant argues that the court submitted a measure of damages, the difference in value formula, where the prior pleading requested repair and replacement damages.[2] The trial court, in its memorandum referred to above, maintained that the amendment was similar to language previously pled in two other paragraphs in Count III of plaintiff's petition prior to amendment. Because of this similarity, the trial court noted that defendant "had notice that plaintiff might claim this measure of damage, and was therefore not prejudiced by said amendment."

We uphold the rulings of the trial court to amend the pleadings and to submit instruction number 7 by first recognizing that the court's " 'permission to amend is wholly discretionary with the trial judge and is not to be questioned on appeal unless there is a clear abuse of discretion.' " *Harris v. Associated Dry Goods Corporation,* 612 S.W.2d 389, 390 (Mo.App.1981), quoting from *Kallenbach v. Varner,* 502 S.W.2d 446, 448 (Mo.App.1973). Rule 55.33(b) allows liberal amendment of the pleadings to conform to the evidence, where the adverse party would not be prejudiced thereby. "Courts are consistently admonished to be liberal in allowing such amendments." *Prewitt v. Continental Insurance Company,* 538 S.W.2d 902, 906 (Mo.App.1976). And

Sixth, as a direct result of such representations, Plaintiff was damaged, for which he has not been fully compensated.

The term "ordinary care" as used in this instruction means that degree of care that would be reasonable in view of Plaintiff's situation.

2. Prior to amending, the paragraph in Count II stated that due to the roof's defectiveness, plaintiff had to replace it, and was damaged thereby in the amount of $20,000. As amended, the pleading stated that as a result of false representations, plaintiff agreed to pay $350,-000, which, because of the defective condition of the roof, exceeded the actual value by $20,-000.

we see no reason to find error in the application of such policy here.

The defendant had notice by virtue of Count III that the difference in value, as well as the cost of repairs, was a possible method of determining damages, and, inasmuch as the amount remained the same regardless of which measure was applied, we fail to perceive how defendant could have been prejudiced.

The defendant further takes exception to instruction number 7, because it contends that there is no evidence in the record on appeal as to the amount plaintiff was paid by Dr. Burst and his wife, one of the two parties who settled with plaintiff, for dismissing with prejudice as to them. As the transcript reveals, only the amount of the settlement with the Bank of St. Louis, $500, was placed before the jury during the course of the trial itself. Defendant proposes that submitting instruction number 7 without evidence as to the amount of the Burst settlement effectively precluded defendant from arguing that plaintiff was already compensated for all damage he sustained.

We note at the outset that, although the record on appeal did not reveal the amount of the settlement with the Bursts, the instruction conference was omitted from the transcript before us. In all likelihood, the settlement matter would have been discussed at that point in the proceedings, in order for the trial court to approve the total amount to be deducted from gross amount of damages determined by the jury. But, we need not speculate as to how the difference between the $500 paid by the Bank of St. Louis and the $900 withdrawn by the instruction was determined. The jury was told in the instruction that the $900 represented the total amount paid to plaintiff by Donald and Alice Burst and the Bank of St. Louis. If defendant disputed the figure, it was defendant's obligation to provide us with a record, upon which such a claim could be reviewed. Rule 81.12(c); *Ingram v. Civil Service Commission of the City of St. Louis,* 584 S.W.2d 633, 635 (Mo. App.1979); *Empire Gas Corporation v. Randolph,* 552 S.W.2d 82, 84 (Mo.App.1977). We decline to speculate whether or how defendant could have been prejudiced by the withdrawal of a larger amount from the jury's consideration than was warranted by the record.

Finally, on this point, we observe that defendant was not precluded, as it claims, from arguing that plaintiff had been fully compensated by the $900. The jury was told of the amount in the instruction as a fact, not as a question to be resolved. The defendant could have thereafter used such fact in argument like any other fact in the case.

In another claim of error, defendant maintains that the trial court erred in submitting the punitive damage instruction [3] for the reason that "there was no pleading or evidence that any statements were willful, wanton or malicious." A reading of the petition disposes of the first part of this argument. The petition contains the allegations that defendant's representations were false and were either known to the defendant to be false when they were made or were made without knowledge as to their truth or falsity. It is further alleged that the representations were made with the intent to defraud the plaintiff, and the petition prays for punitive damages. Such pleadings were adequate to fairly inform "defendant of the nature of the demand. It was not necessary to plead that the acts were done with malice or maliciously since those words are equivalent in definition to wrongful acts intentionally done without just cause or excuse." *Bower v. Hog Builders, Inc.,* 461 S.W.2d 784, 798–799 (Mo.1970). See also 22 Am.Jur.2d, Damages, § 293, pp. 388–389. The evidence in support of these allegations was such that the jury could find that Barton consciously and recklessly made representations "as positive assertions without knowledge of the truth" as to the condition of the roofs. *White v. Superior Trailer Sales, Inc.,* 604 S.W.2d 812, 814 (Mo.App.1980). See

3. MAI 10.01 and 16.01.

*Citizens Bank of University City v. Gehl,* 567 S.W.2d 423, 425–426 (Mo.App.1978). Grounds for punitive damages were adequately pleaded and proved, there was no error in submitting the punitive damage instruction to the jury.

The defendant's final point, presented as an alternative to the others is that the trial court erred in allowing the verdict for actual damages to stand in any amount in excess of $1000. The defendant arrives at this amount by focusing on certain testimony elicited on cross-examination from plaintiff's expert witness Zoellner. The testimony was to the effect that, if the roof were in fact one year older than represented by the seller, Zoellner would have decreased his appraisal of the total value of the apartment complex by ten percent of the value of the roof, or $1,500. By deducting from this figure the amount paid by the Bank of St. Louis, $500, defendant concludes that the maximum actual damages suffered by plaintiff could not have exceeded $1000. We cannot accept defendant's argument, for it fails to take into account the fact that other evidence showed the roof not only to be a year older than represented, but inherently defective at the time of purchase. In the words of witness Zoellner, "If you have a roof already bad, you can't figure that way. People don't like to walk around [in their apartments] with umbrellas." The jury was free to disregard the hypothetical situation posed by defendant's questions to Zoellner, i.e., that the roof was simply a year older, because such hypothesis did not include a reference to the evidence of the inherent defectiveness which the jury could, and did, believe.[4] The trial court did not err in approving the verdict for actual damages as returned by the jury.

Judgment affirmed.

STEWART, P.J., and CRANDALL, J., concur.

4. See the discussion of the function of the hypothetical question contained in *Hughey v. Graham,* 604 S.W.2d 626, 630 (Mo.App.1980).