DEAN WITTER REYNOLDS, INC., Plaintiff,

v.

Marilyn CORLEY, Defendant-Cross-Claimant, Respondent,

and

Richard Jacobs, Defendant-Cross-Claimant, Appellant.

No. 48503.

Missouri Court of Appeals, Eastern District, Division Four.

July 23, 1985.

Motion for Rehearing and/or Transfer Denied Oct. 3, 1985.

Application to Transfer Denied Nov. 21, 1985.

Richard Jacobs, St. Louis, for defendant-cross-claimant, appellant.

Joseph S. Rubin, Clayton, for defendant-cross-claimant, respondent.

SNYDER, Judge.

This litigation arose out of an unfortunate dispute between a lawyer and his client who had a claim against a broker. The broker, Dean Witter Reynolds, Inc. filed an interpleader suit seeking determination of who had the right to the funds Dean Witter was holding in its customer's account. Marilyn D. Corley, the customer, and Richard M. Jacobs, the lawyer, were joined as defendants. Corley has filed a motion to dismiss the appeal which was submitted with the case. The motion is granted and the appeal dismissed.

Corley had discussed the mishandling of her account with an employee of Dean Wit-ter and, according to her testimony, Dean Witter had made a firm offer of extra cash of $8,000.00 over and above securities worth $10,428.65. Mr. Camp, the employee of Dean Witter with whom Corley talked, said that he thought his original extra cash offer was $13,000.00 or $14,000.00. Mrs. Corley received the impression that there was a firm offer of only $8,000.00 and that she expected that Mr. Camp, for Dean Witter, would increase his offer to $12,000.00 plus the securities which were in her name.

Corley brought all of her records pertaining to her transactions with Dean Witter to Jacobs at the time of their first meeting on September 19, 1980. Jacobs told her she had an excellent case worth $60,000.00 or $80,000.00, and Corley signed a 40% contingent fee contract for any amount obtained by Jacobs in excess of $12,000.00. Corley testified that she told Jacobs she wished to add "No securities, cash only," but Jacobs told her, "Oh, no, we both understand what we mean."

Corley had second thoughts over the weekend about retaining an attorney and decided she did not wish to have a lawyer represent her. She called Jacobs at approximately 9:00 a.m. on Monday, September 22, 1980, told him she wanted to dismiss the case and discharge him as her lawyer, and explained her reason. She offered to pay for the hour she had spent with him.

Jacobs refused to be discharged and told Corley that she had signed a contract which she had to live up to and that there was nothing she could do about it. Corley testified that Jacobs then hung up on her. On Tuesday, September 23, 1980, Corley received a letter from Jacobs dated September 19, 1980, confirming their contract for legal services. A copy of the contingency fee agreement was enclosed with the letter.

Corley attempted to dismiss Jacobs two more times, but he refused to be dismissed, claiming a contractual obligation which prevented her from firing him.

Jacobs called Corley and said he had settled her case on October 23, 1980. She had given him no authority to settle her

case and she refused to sign the releases which Jacobs had sent. He threatened her with a million-dollar lawsuit, but on December 23, 1980 she settled her claim directly with Dean Witter and executed a release prepared by Dean Witter.

On December 17, 1980 and again on June 13, 1982, Jacobs wrote letters to inform Dean Witter of his interest in Corley's money. Dean Witter later released to Corley the bulk of her undisputed securities, but on March 17, 1981 filed an interpleader action and paid into the court the cash portion of the settlement.

Corley made a written request to Jacobs on February 15, 1981 for the return of her Dean Witter records, but he refused to return the records to her, claiming that he had a possessory attorney's lien on them.

Corley signed a consent to arbitration form on March 2, 1981 in which she agreed to be bound by the decision of a panel of the Committee of Resolution of Fee Disputes of the Bar Association of Metropolitan St. Louis. Jacobs signed a similar form on April 1, 1981.

On May 15, both Corley and Jacobs participated in an arbitration hearing before the fee dispute committee of the St. Louis Metropolitan Bar Association. The arbitration hearing resulted in an award of a $10,172.28 fee to Jacobs.

In the Dean Witter interpleader suit Corley filed a cross-claim in three counts against Jacobs and Jacobs filed a cross-claim in three counts against Corley. The trial court ruled in favor of Corley on Count I of her cross-claim, setting aside the $10,172.28 fee arbitration award to Jacobs. The trial court found for Corley on Count II, awarding her damages of one dollar for conversion of her brokerage account records. The trial court ordered that the original sum of $21,707.00, which had been paid to the clerk of the court, plus earned interest, be paid over to Corley. The judgment was for Jacobs on Count III of Corley's cross-claim. The judgment was for Corley on all three counts of Jacobs' cross-claim.

Appellant Jacobs contends the trial court erred in vacating the arbitration award and in finding in favor of Corley on her conversion claim. He also charges the trial court erred in denying relief to him under the prima facie tort doctrine and on the theory of abuse of process.

Respondent Corley has moved to dismiss Jacob's appeal for two reasons. First, because he changed a page of the trial transcript before he filed it with the court and second, because he failed to file a complete transcript.

In one volume of the transcript of the hearing, appellant removed an original page and substituted instead a xerox copy of the page from which a portion had been whited out. On the original page it had showed an asterisk before several names and down below an asterisk with the words "not transcribed at special request of the appellant." On the xerox copy filed with the court, appellant had whited out an asterisk before Marilyn Corley's name and the words below "at special request of the appellant."

His purpose in doing this was not clear except that when the transcript was first filed it contained only the direct examination of the chairman of the fee dispute panel and the cross-examination of Corley. The cross-examination of the panel chairman and the direct examination of Corley were omitted, as was the testimony of three other witnesses including the intake person at the St. Louis Metropolitan Bar Association for the fee dispute matter and the attorney who represented Corley during the fee dispute hearing.

The record does not disclose the identity of the third missing witness or the subject of his testimony.

Whatever appellant's purpose in altering the transcript page when he filed it, it was an attempt to deceive the court or his party opponent. Apparently he did not want it said that he had ordered the court reporter not to transcribe certain portions of the record.

It might also be well to say that when the transcript was filed by appellant it was in three volumes, one of which was first thought to contain the testimony of the three missing witnesses, but upon examination was found to be simply a duplicate of one of the other volumes. To put the best possible construction on the confusion attendant upon the filing of the transcript, the court will assume that the duplicate volumes were filed inadvertently and that there was no intent to deceive the court into thinking that a complete transcript had been filed.

Appellant's conduct in altering a page of the transcript was unforgiveable. Respondent Corley asserts that it was alteration of a public record, but it arguably did not become a public record until it was filed with this court. Nonetheless, the alteration of the page after it had been approved by the trial judge was conduct which cannot be approved by this court.

The second reason advanced by respondent in her motion to dismiss the appeal is more important. It is the failure to file a transcript of the testimony of the attorney who represented Corley at the fee dispute hearing and the employee of the St. Louis Metropolitan Bar Association who was the intake person at the Bar Association for the fee dispute matter.

Either of these witnesses, or the third witness whose testimony was omitted from the record may have had something to say about Corley's claim of unethical conduct on the part of Jacobs, that is, his conduct in refusing to remove himself from the case after Corley discharged him and his refusal to return to Corley her records of her investment transactions when she demanded them. Missouri Rules Governing the Missouri Bar and Judiciary, Rules 4 DR2–110(B)(4) and 4 DR9–102(B)(4); Missouri Bar Association Formal Opinion No. 115.

The testimony of the missing witnesses might have allowed the trial court to determine whether the alleged unethical conduct was brought to the attention of the bar association personnel or the panel who decided the fee dispute, and what representations were made to Corley by bar association personnel, by her attorney, or by the members of the panel, concerning her claim of violation of the canons of ethics. No transcript of the fee dispute hearing was made.

This court cannot rule on the key question in this litigation without a complete record and the burden is on the appellant to provide the court with a complete record necessary to a determination of the questions presented on appeal. *Delf v. Cartwright*, 651 S.W.2d 622 (Mo.App.1983), *Lewis v. Colombia Mut. Ins. Co.*, 588 S.W.2d 161 (Mo.App. Banc 1979).

The key question, of course, is whether or not the trial court had jurisdiction to set aside the award of the fee dispute panel or whether it was bound by that award. The judgment of the trial court did not set forth the reasons for its decision. One of the reasons might have been that undue means were used in procuring the award, perhaps by misrepresentation that the ethics question would be decided later in connection with the fee question.

The rules of the Bar Association are explicit in saying that the fee dispute committee does not decide ethical questions. Grievances concerning ethics are handled by another committee.

It is true that Corley was represented by counsel in the fee dispute hearing, counsel appointed by the bar association. This court does not know what his testimony was relating to the ethics question as it concerned the fee dispute.

If the question of ethics was brought up and ignored by the bar association or by the panel, then there may have been valid statutory grounds justifying setting aside the arbitration award. Perhaps the trial judge thought that from the testimony there was a reason to vacate the award on the ground that it was procured by corruption, fraud or other undue means as provided in § 435.405 RSMo.Cum.Supp.1984. This court cannot be sure from the record before it.

Appellant had every opportunity to file a complete transcript with the court. He was requested to do so by court personnel and declined. The burden is on the appel-

lant to file a complete transcript. *Brummit v. O'Fallon Brothers Construction Company,* 671 S.W.2d 441, 442[3] (Mo.App.1984); *Ellis v. Farmers Insurance Group,* 659 S.W.2d 3, 4[1, 2] (Mo.App.1983); *Koch v. Victoria Loan Company,* 652 S.W.2d 212, 218[9] (Mo.App.1983).

These cases were handed down after a change in the rule which allows the respondent to file additional parts of the record on appeal if he considers it necessary. Rule 81.12(c). No cases could be found which interpret the rule change, and this court does not interpret it to mean that the burden shifts to the respondent so as to relieve the appellant from filing all of the record on appeal necessary to the determination of the issues raised.

The trial court did not designate the reason for its ruling which may have been based on the testimony of the witnesses whose testimony is missing from the transcript filed with this court. Without the complete record it cannot be determined with certainty whether the trial court's judgment was erroneous.

The appeal is dismissed.

SMITH, P.J., and SATZ, J., concur.